## FAIRBANK and others vs. LEARY.

ARTICLES OF COPARTNERSHIP. *(1) Validity of clause limiting rights of partners to do business on individual account. (2) No legal restriction on number of partners. (3) Articles rendered void by secret agreement to deceive the public. (4) Pleading: Complaint held not to show such an agreement.*

1. A clause in a copartnership agreement wherein each partner agrees not to transact on his individual account, within twenty miles of the village in which such copartnership is to do business, the kind of business for the transaction of which it is created, is unobjectionable.

2. Any number of persons may lawfully form a copartnership to buy the produce of the country, and sell merchandise, at any specified place.

3. If such copartnership is in fact formed (though not so expressed in the articles) for the purpose of preventing competition in the markets in which the firm may operate, and with the intention of keeping secret from the public the existence of the agreement, and if its existence is thus kept secret and an appearance of competition between the parties maintained by them toward the public, such executed intention of secrecy and deception taints the agreement itself, and renders it illegal and void.

4. But in a complaint for an accounting between alleged partners, an averment that the firms whose members constituted the alleged partnership, " operated independent of each other or of any member of said copartnership, and in the same manner as they had theretofore done, and as though said copartnership did not exist," does not show that there was any secrecy, or intention of secrecy, as to the true relations of the parties, and does not, therefore, make the complaint bad, on demurrer.

APPEAL from the Circuit Court for *Fond du Lac* County.

The complaint alleges that on September 1, 1869, the parties entered into a copartnership as follows:

" Articles of agreement made and entered into this first day of September, 1869, by and between D. C. Fairbank, Jerry Leary, Fred. Doney and G. W. Stanton, all of Dodge county, and A. A. Greenman, of Fond du Lac county and state of Wisconsin, do hereby agree to enter into copartnership for the term of five years, for the purpose of doing a general produce, live stock and wool, and such other business as usually belongs, such as coal, lime, salt, hides, etc.; and each one of

the company is to furnish equal amounts of capital and to share equal in profits and losses that may accrue from said business done at Waupun or at any other point that said company may agree to do the above named business at.

" And it is further agreed, that Fairbank & Stanton furnish their elevator at Waupun for the said term, and for the rent of the same they are to have ten per cent. interest per annum, and valued at four thousand dollars; also Jerry Leary to furnish his side-hill elevator and all his bags at same per cent., and valued at two thousand dollars; also Fred. Doney to furnish his elevator at same per cent., and valued at two thousand dollars.

" And said company is to pay all insurance on the above named property equally, and also all the expenses accruing from said business.

" And we further agree that no one of the company shall on his own account have anything to do, directly or indirectly, with transacting the same kind of business at any other point within twenty miles of Waupun, without mutual consent of the company, where the interest of the same shall be affected.

" And it is further understood that neither of the above parties shall hold any of the produce purchased by them any longer than necessary for shipment, unless agreed to by said company; and further, if any rebate of freight on any railroad where said company may do business, or any passes, shall be obtained by any one of said company, all the parties shall share equally in the same; and the expenses of keeping of the horses used in either elevator are to be paid by this company; and if either of said company shall go to any other station to do business for said company, the board and necessary expenses shall be paid by the company, unless the family of the same live at the same place; and that when the amount of capital is determined upon that each one is to furnish, and it is put into the company, it is not to be drawn from said business, but remain there until otherwise ordered by a majority of said

company; and if any elevator or warehouse shall be purchased by said company, each one shall pay and own equally in the same; and further, all additional transactions shall be done by a two-thirds majority of this company, and a majority of this company shall be the rule of all business done by this company; and further, no other than the above named parties shall be received into company as partners in any way whatsoever."

The complaint then proceeds as follows:

"That the said copartners, parties to this action, on the 1st day of September, 1869, aforesaid, entered upon a copartnership business at the village of Waupun, in the state of Wisconsin, in pursuance of said agreement, and continued the same until on or about the 19th day of October, 1872, when said copartnership was dissolved by mutual consent.

"And the said plaintiffs further allege, that prior to the commencement of the said partnership business, the said Alonzo A. Greenman, one of the said plaintiffs, and the said defendant had been doing business at said village of Waupun, in said defendant's warehouse, as copartners under the name, style and firm of Leary & Greenman, in buying produce and such other commodities as produce dealers and commission merchants usually deal in, and consigning the same to agents and commission merchants in Milwaukee.

"That said David C. Fairbank and George W. Stanton, two of said plaintiffs, prior to the commencement of said copartnership business had been doing the same kind of business at Waupun in their said warehouse, under the name, style and firm of Fairbank & Stanton, and consigning to their agents and commission merchants in Milwaukee.

"That said Frederick Doney, the other of said plaintiffs, prior to the commencement of said partnership business, had been doing the same kind of business at Waupun, in his said warehouse, in the same manner, and consigning to agents and commission merchants in Milwaukee.

"And the said plaintiffs further allege, that the manner of doing business by said copartners, under said agreement, was as follows:

"Said Leary & Greenman operated in said Leary's warehouse, buying and selling such commodities as the said copartners were to deal in, consigning their produce, and other commodities purchased by them, to their consignees in Milwaukee, to wit, West & Fowler.

"Said Fairbank & Stanton operated in their said warehouse, buying and selling and consigning to their own agents and consignees, in the same manner as above mentioned in reference to said Leary & Greenman.

"Said Frederick Doney operated in his said warehouse, buying and selling and consigning to his own agents and consignees, in the manner above mentioned.

"Each of said firms operating independent of each other or of any member of said copartnership, and in the same manner as they had theretofore done, and as though the said copartnership did not exist; but on settling, or accounting, paying expenses, sharing losses and profits, and adjusting all their said business transactions, in the manner mentioned and provided in said agreement.

"And the said plaintiffs further allege, that on the 21st day of August, 1871, the said copartners had an accounting of and concerning their said copartnership business; and after deducting from the gross income thereof, the expenses of conducting the same, and all losses incurred therein, there was found upon said accounting, as net profits of said business, the sum of $14,638.11, which sum was equally apportioned to and divided between the said copartners. That said accounting was of and concerning, and included all the said copartnership business and dealings from the commencement thereof as aforesaid, and up to and including said 21st day of August, 1871."

The complaint further alleges a dissolution of the copartnership, and an accounting between the partners, October

19, 1872; and states facts and circumstances showing that since such dissolution and accounting the defendant has received money belonging to the firm, and for which he ought to account. Prayer, for an accounting and for judgment in plaintiffs' favor for the amount found due them thereon.

The defendant demurred to the complaint as not stating facts sufficient to constitute a cause of action; and appealed from an order overruling his demurrer.

A brief was filed for the appellant signed by *H. E. Connit* as his attorney, and by *J. M. Gillett*, of counsel; and one for the respondents signed by *Eli Hooker* as their attorney, with *Edward S. Bragg*, of counsel. The cause was argued orally by *J. M. Gillett* for the appellant, and *Eli Hooker* for the respondents.

For the appellant it was argued, 1. That the agreement set forth in the complaint operated in unreasonable restraint of trade, and was therefore void. *Stanton v. Allen*, 5 Denio, 434; *Alger v. Thatcher*, 19 Pick., 51; *Hilton v. Eckersley*, 6 E. & B., 47, 73; 2 Chitty on Con., 985, and cases cited in note. 2. That, by prohibiting the transaction of business by the partners individually, it tended to create a monopoly to reduce the prices to be paid for produce, and was for that reason void. 5 Denio, 434; *Hooker v. Vandewater*, 4 id., 349. 3. That it was a conspiracy, having for its design the maintenance of a false appearance of competition, while in reality the members of the firm were laboring for the common interest and seeking to depress the market. Such an agreement is void. 4 Denio, 349; 5 id., 434; 6 Johns., 194; 8 id., 444; *Craft v. McConoughly*, 3 Monthly West. Jur., 233; *S. C.*, Cent. L. J., Aug. 18, 1876, p. 535. 4. That the plaintiffs, as parties to an illegal contract, are not entitled to the aid of a court of equity, and, the complaint not showing them entitled to any relief, the demurrer should have been sustained. 58 Ill., 172; 54 id., 309; 66 id., 452; *Swartzer v. Gillett*, 1 Chand., 207.

For the respondent it was contended, 1. That, although a contract in general restraint of trade is void, yet all the authorities hold that if it be in partial restraint only, and if such restraint be reasonable, and founded upon a good consideration, the contract will be valid. *Harris v. Coleman*, 18 Vesey, 436; *Alger v. Thatcher*, 19 Pick., 51; *Broad v. Joliffe*, Cro. Jac., 596; *Mitchell v. Reynold*, Fortescue, 296; 1 P. Wms., 181; *Nobles v. Bates*, 7 Cow., 308; *Hitchcock v. Coker*, 1 Nev. & Per., 796; 6 A. & E., 438; *Dunlop v. Gregory*, 6 Seld., 241; *Hearn v. Griffin*, 2 Chitty, 407; *Laubenheimer v. Mann*, 17 Wis., 544; *Ulrich v. Hull*, id., 427. In this case, the agreement was but the common one prohibiting the partners from transacting the same kind of business within the territory where the firm was intended to operate. It was not in restraint of, but rather tended to enlarge trade by a combination of capital and skill, thus increasing their facilities for business and enabling them to reach a much larger circle of customers. 2. That the agreement did not create a monopoly. If the firm failed to pay for produce what it was worth, sellers would seek another market, or other buyers would do the purchasing, and the contracting parties would defeat their own enterprise. 4 Black. Com., 159; Webster's Dic., "Monopoly;" *Mitchell v. Reynold*, *supra*; *Kellogg v. Larkin*, 3 Chand., 133. 3. That there was nothing to show a conspiracy. A comparison of this case with those cited by appellant's counsel will show the inapplicability of the latter.

LYON, J. The clause in the copartnership agreement wherein each partner agreed not to transact on his individual account, within twenty miles of Waupun, the kind of business for the transaction of which the copartnership was created, is unobjectionable. It is the constant course to insert such clauses in copartnership articles; and in no correct sense can it be said that they operate as a restraint upon trade. On the contrary, they are reasonable and proper stipulations to

insure the fidelity of each partner to the interests of the firm, and have always been upheld by the courts, as the cases cited in the brief of counsel for the plaintiffs abundantly show.

Neither is any other express stipulation in the agreement illegal on its face. By the terms of the instrument, a copartnership between the parties to transact a lawful business in an apparently lawful manner, was formed. Of course it does not require argument or citation of authority to show that five or any other number of men may lawfully form a copartnership to buy the produce of the country and sell merchandise, at Waupun or any other place.

But it does not necessarily follow that the agreement under consideration is a valid one. Although not expressed therein, if that agreement was in fact made for the purpose of preventing competition in the markets in which the firm might operate, and with the intention of keeping secret from the public the existence of the agreement, and if its existence was thus kept secret, and an appearance of competition between the partners maintained by them towards the public, such executed intention of secrecy and deception tainted the agreement itself, and rendered it illegal and void. In that case, no rights can be enforced under such illegal agreement by any party against another party thereto.

The law does not and did not require that these parties should compete in the purchase of produce. Individually each had an undoubted right to bid therefor as low as he pleased. Collectively, they had the same right, unless deception was practiced on the public. But if they held themselves out as competing purchasers, and knew that the people who sold in the markets where they operated relied upon such competition (as well they might), as a guaranty that they were obtaining the full market value of their produce, while, at the same time, the purchasers were not in competition but in secret league to depress the market, the agreement under which the latter operated is illegal and void, and no court will lend its

aid to enforce any of its stipulations. The cases which hold that secret agreements between persons attending auction sales not to bid against each other, and to divide the property bid off by one of them, are illegal, go upon the same principle. These views are fully sustained by the authorities cited by counsel for the defendant; to which we add *The Morris Run Coal Co. v. The Barclay Coal Co.*, 68 Pa. St., 173. The case of *Craft v. McConoughly*, recently decided by the supreme court of Illinois, and reported in 3 Monthly West. Jur., 233, is an instructive case, and very similar in its facts to the case under consideration.

It only remains to determine whether the complaint shows on its face that the agreement was entered into with the unlawful intention above mentioned. The only averment thereof which it is claimed shows such intention, is the following: "Each of said firms operating independent of each other or any member of said copartnership, and in the same manner as they had theretofore done, and as though the said copartnership did not exist." But we think the agreement cannot fairly be so interpreted. It may be true, and yet there may have been no intention of secrecy — no conspiracy, so to speak; the true relations between the parties may have been notorious, and all persons selling produce in the markets where the firm was a purchaser, may have known that the members of it were not in competition.

If the agreement between the parties is valid and binding upon them, the complaint states a cause of action against the defendant. Finding nothing in the complaint which shows such agreement to be illegal, we must hold that the demurrer thereto was properly overruled.

*By the Court.* — Order affirmed.