Washburn vs. Dosch and another.

WASHBURN, Appellant, vs. DOSCH and another, Respondents.

*March 3 — March 22, 1887.*

*(1) Pleading: Counterclaim: Defense. (2) Contracts: Restraint of trade. (3) Statute of frauds.*

1. Where matter properly pleadable as a defense — but not pleadable as a counterclaim because not constituting a cause of action in favor of *both* defendants — has been pleaded as a counterclaim, and a verdict has been rendered thereon for damages in favor of the defendants, the error may be cured by the trial court striking out such damages from the verdict and rendering judgment merely dismissing the complaint with costs.

2. An agreement, made upon the sale of a stock of goods, good-will, etc., that the vendor will not engage in the same business in that village for a period of five years, is valid, being only a partial or limited restraint upon trade.

3. A contract fully executed by one party at the time of the making thereof, is not within the statute of frauds, although by its terms it is not to be performed by the other party within one year.

APPEAL from the Circuit Court for *Richland* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

The complaint is upon a promissory note executed by the defendants, *Dosch* and *Noble*, jointly, February 12, 1883, payable to the plaintiff, for $528 and interest. The answer of the defendants alleged, in effect, that the note was signed by *Noble* merely as surety for *Dosch*, to the knowledge of the plaintiff; that the note was given by *Dosch* at the time named in part payment of the purchase price

of a stock of dry goods, groceries, furniture, and fixtures, invoiced at $6,380.80, then owned by the plaintiff and in his store building in the village of Excelsior, and in which he had for years carried on a successful and lucrative business as a dry-goods and grocery merchant; that, upon said purchase then made, the said *Dosch* agreed to pay to the said plaintiff for said dry goods, groceries, furniture, and fixtures, together with the good-will of said business, and upon the agreement of the plaintiff that he would refrain from doing any such business in said village or vicinity for the period of five years (for which period *Dosch* then leased said store of the plaintiff at $366 per year), the said sum of $6,380.80, and thereupon said *Dosch* entered into and took possession of said property and continued said business; that, in violation of said agreement, the plaintiff re-established the same kind of business, and continued to sell in said village the same class of dry goods and groceries at retail, to the damage of *Dosch* in the sum of $2,000; and, for a second counterclaim, that the plaintiff was indebted to *Dosch* for or on account of railroad ties in the sum of $100; that *Dosch* had fully performed said agreement on his part, and that the plaintiff had failed to perform. The answer demanded the dismissal of the complaint with costs, and that the amount of the plaintiff's claim be set off against the claim of *Dosch*, and for judgment. To each of the counterclaims the plaintiff replied by general denial.

At the close of the trial, the jury returned answers to four several questions submitted to them, to the effect (1) that the value of the 100 railroad ties, for which demand was made in the second counterclaim, was $27.50; (2) that such railroad ties were not paid or settled for at the time of settlement between the plaintiff and *Dosch* in April, 1884; (3) that the plaintiff agreed with *Dosch*, when he sold him his stock of goods in February, 1883, that, in consideration of *Dosch* buying the stock, he would not

enter into the dry-goods and grocery trade in Excelsior for a period of five years; (4) that the damages which directly resulted to *Dosch* from the plaintiff again going into the dry-goods and grocery trade in Excelsior were $550. The jury at the same time returned a general verdict as follows: "We, the jury, impaneled and sworn to try the above-entitled action, find for the defendants ($16.57) sixteen dollars and 57-100;" which last words and figures, to wit, "($16.57) sixteen dollars and 57-100," the court directed to be stricken from the verdict, and the same were stricken therefrom. The plaintiff moved the court upon the minutes to set aside said verdict and findings, and for a new trial, which was denied. Thereupon judgment was rendered upon said verdict and findings, dismissing the complaint upon the merits and for costs. From the judgment so rendered the plaintiff appeals.

*John D. Wilson*, for the appellant.

For the respondents there was a brief by *Brooks & Dutcher*, and oral argument by *Mr. Brooks*.

CASSODAY, J. The plaintiff objected to any evidence in support of the first counterclaim, on the ground that the matter therein alleged was not properly pleadable as a counterclaim. The reason for the objection is that such counterclaim did not exist in favor of both defendants and against the plaintiff, so that a several judgment might have been had thereon in the action, as required by sec. 2656, R. S. But it was for a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or, at least, it was connected with the subject of the action. In this respect it satisfied subd. 1 of that section. Assuming that it did not strictly satisfy all the requirements of a counterclaim, still it was properly pleadable by both defendants as "a statement of new matter constituting a defense." Subd. 2, sec.

2655, R. S.   As such mere defense no reply was necessary, as it was to be deemed controverted without.   Sec. 2667, R. S.   Although it was pleaded as a counterclaim and replied to as such, yet the amendment of the verdict by the court striking out the excess found in favor of the defendants and giving judgment dismissing the complaint and for costs only, resulted in limiting the effect of the answer to a mere defense.   The amendment was favorable to the plaintiff, and affected none of his substantial rights, and was properly deemed immaterial and amendable by the court.   Secs. 2669, 2670, 2829, R. S.

The good-will of an established and successful business is undoubtedly of much value to the possessor of such business, and may be sold with it.   *Wallingford v. Burr*, 17 Neb. 137, and cases there cited.   But while such sale will entitle the purchaser to a certain limited protection, it will not of itself alone be sufficient to preclude the seller from engaging in a separate and independent business of the same kind in the same village or city.   *Pearson v. Pearson*, L. R. 27 Ch. Div. 145, overruling *Labouchere v. Dawson*, L. R. 13 Eq. 322, in so far as it held that such seller so engaged must not solicit the customers of the old business to give their custom to himself.   See, also, *Cottrell v. Babcock P. P. M. Co.* 54 Conn. 122; *Bergamini v. Bastian*, 48 Am. Rep. 216.   In order to preclude the seller from engaging in such separate and independent business, there must be an agreement to that effect based upon a good and valuable consideration and not contrary to law or public policy.

The evidence seems to be sufficient to support the finding that, as a part of the contract of sale, the plaintiff agreed with *Dosch* not to again engage in the dry-goods and grocery trade in the village for a period of five years.   The evidence is undisputed that he broke such agreement, if he ever made it.   Manifestly, the purchase was made with the expectation of both parties that *Dosch* would continue the

same business for the period of at least five years, in the same village and in the same building; for he not only purchased the goods, furniture, and fixtures therein, but took from the plaintiff a contemporaneous lease of the building for the period named.   There was evidence tending to prove that, as an inducement to *Dosch* to make the sale, the plaintiff spoke of the good-will of the business and placed a high estimate upon its value.   That value consisted largely in the probability of the plaintiff's former customers thereafter giving their trade to *Dosch* at the same store.   Of course, that probability would be very much strengthened, and such value correspondingly increased, by including in the contract of sale a binding agreement upon the part of the plaintiff to abstain thereafter from engaging in the same business in the same village.   In the language of BRETT, M. R., " such a contract added an indelible feature to the business, and increased the value of the good-will."   *Jacoby v. Whitmore*, 49 Law T. (N. S.) 337, 28 Alb. L. J. 510.   This being so, such an agreement would necessarily be a very substantial inducement to the purchaser to make such purchase, and to pay or agree to pay the price named.   These things being so, we think the jury were warranted in finding that the plaintiff made such agreement in consideration of the purchase.

That agreement was in no sense an absolute restraint upon trade.   The plaintiff was still at liberty to engage in any and every other kind of business in the same village.   He was, moreover, still at liberty to engage in the same business in any other village or city in this or any other state. The agreement, therefore, was only for a partial or limited restraint upon the plaintiff as a tradesman, and not upon trade generally.   *Kellogg v. Larkin*, 3 Pin. 141, 56 Am. Dec. 172.   Such restraining of one person from doing a particular class of business in a particular place, left the field of competition free and open to everybody else.   It

merely took from one individual the right to resume the beneficial use of what he had himself already disposed of for value to another.. The enforcement of such an agreement is not contrary to public policy. *Dwight v. Hamilton*, 113 Mass. 175; *Burrill v. Daggett*, 77 Me. 545; *Fairbank v. Leary*, 40 Wis. 637. Such restriction did not extend beyond what was necessary for the protection of *Dosch* in the enjoyment of the trade, business, and good-will which he so purchased from the plaintiff, and, under the authorities, it was reasonable, and hence permissible. *Dunlop v. Gregory*, 10 N. Y. 241; *Doutelle v. Smith*, 116 Mass. 111. "The restriction which it imposes," said GRAY, C. J., in the case last cited, "is confined to a particular place, and is but co-extensive with the interests purchased." We must hold that the contract was based upon a good consideration, and not void as being against public policy.

Was the agreement void because it rested in parol and by its terms was not to be performed within one year from the making thereof? Subd. 1, sec. 2307, R. S. Upon this question courts are divided. Several years ago, and after mature deliberation, this court concluded to follow the rule sanctioned in England and several of our sister states, instead of the one adopted in New York and some of the New England states. *McClellan v. Sanford*, 26 Wis. 609. The cases are there classified. See, also, *Jilson v. Gilbert*, 26 Wis. 637; *Treat v. Hiles, ante,* p. 344. The rule thus sanctioned by this court is to the effect that, although the agreement by its terms is not to be performed by one of the parties thereto within one year from the making thereof, yet, if it is based upon a good and valuable consideration received by such party and executed by the other party at or before the time of the making of such contract, then the case is thereby taken out of the statute, and may be enforced. To use the language of DIXON, C. J., in the leading case cited, the statute "applies only to contracts not to

be performed on *either* side within the year." The rule thus sanctioned by this court was recently applied in Iowa to a case where the agreement was to refrain from doing a particular kind of business in a particular place. *Smalley v. Greene*, 52 Iowa, 241. It follows that the contract was binding upon the plaintiff.

We find no error in the rulings of the court upon matters of evidence, nor in giving instructions to the jury. The exceptions in these regards are sufficiently covered by what has already been said.

*By the Court.*— The judgment of the circuit court is affirmed.

See notes to this case in 32 N. W. Rep. 551, 552.— REP.