JAMES A. YATES v. EDWARD BALL.

181 So. 341.
Opinion Filed October 13, 1937.
On Rehearing June 3, 1938.

*Robert H. Anderson* and *Harry T. Gray,* for Plaintiff in Error;

*George M. Powell, Henry P. Adair, John M. McNatt,* and *Knight, Adair, Cooper & Osborne,* for Defendant in Error.

TERRELL, J.—The declaration in this cause is predicated on an oral agreement to pay certain second mortgage bonds secured by a trust deed and falling due approximately four years from date of the agreement. Yates, the Plaintiff in Error, was the holder by assignment of said bonds and after much pleading not essential to detail, the case went to trial on the issue made by the following pleas to the declaration; (a) Did not promise as alleged (b) Denial that the plaintiff was under his assignment the lawful holder of the bonds, and (c) The agreement was void under the statute of frauds because it was for longer duration than one year and no note or memorandum of it was in writing signed by the party to be charged.

At the conclusion of plaintiff's testimony, motion for an instructed verdict on the part of the defendant was granted. Motion for new trial was denied, final judgment was entered, and writ of error was prosecuted to this court.

The motion for directed verdict was grounded on the insufficiency of the evidence to support the agreement sued on, variation between the agreement and the evidence offered to support it, the agreement sued on was in viola-

tion of the statute of frauds (Section 3872 Revised General Statutes of 1920, Section 5779 Compiled General Laws of 1927) for the reasons stated in plea (c) above and that the agreement was abandoned before the minds of the parties met.

The court below did not indicate on which of these grounds the motion for directed verdict was granted but the questions we are called on to answer are substantially the same as the grounds for the motion, so we will discuss first the question of whether or not there was a fatal variation between the agreement sued on and the evidence offered in support of it.

The agreement sued on was oral but is alleged in the declaration to have been in the following words:

"The bondholders promised that they would refrain from taking any steps to terminate the aforesaid extension agreement until defendant could form a new corporation to acquire title to said lands and that they would likewise refrain from precipitating the maturity of the second mortgage bonds, and would take no steps to cause the second trust deed to be foreclosed and would, upon the formation of said new corporation by defendant accept a delayed payment equal to the semi-annual interest then due and owing on their bonds and would thereafter cooperate with defendant by permitting an attorney of his selection to represent their (second mortgage) trustee in a suit which defendant proposed to have brought for the alleged purpose of clearing the title to said property by eliminating certain interests that were subordinate to said mortgage; and in consideration of the foregoing undertakings and assurances given by the bondholders and in return therefor defendant, through his said representative, agreed that he would cause said new corporation to be promptly formed and adequately capitalized so that it would be able to pay for said property and

protect the lien of the mortgage securing the second issue of bonds, and that said corporation would acquire the legal title to said "Atlantic Beach Tract" and pay the interest then overdue on said mortgage bonds and the interest then due on the first mortgage bonds and that defendant or his said corporation would thereafter at all times meet the payments of principal and interest to become due on said second issue of bonds and would give protection to said bonds against the first mortgage bonds, so that the second issue of bonds would be made good in all respects and so that the holders of the second issue need have no further concern about the ultimate payment of their bonds."

Summarized, the plaintiff, Yates, agreed: (1) To refrain from taking any steps to terminate the extension agreement until defendant could form a new corporation to acquire title to the lands described in the trust deed as the "Atlantic Beach Tract," (2) To refrain from precipitating the maturity of the second mortgage bonds or from foreclosing the trust deed, (3) Accept delayed payment of interest due when the new corporation was formed, and (4) To cooperate with an attorney of defendant's selection to prosecute a foreclosure suit to clear the title of "Atlantic Beach Tract" of all incumbrances subordinate to the second mortgage. In consideration of these assurances on the part of plaintiff, defendant Ball agreed; (1) That he would have the new corporation promptly created and amply capitalized to pay for the "Atlantic Beach Tract," protect the lien of Yates' mortgage securing the second issue of bonds and acquire the legal title to the lands securing them, (2) Pay interest overdue on the second mortgage bonds including that due on first mortgage bonds, (3) At all times thereafter, meet the payments of principal and interest to become due on the second mortgage bonds, and (4) Pro-

tect the second mortgage bonds against the first mortgage bonds and make them payable in any event.

As. a preliminary to the discussion of the evidence, it is pertinent to say that there was a first, second, and third mortgage and bond issue against the "Atlantic Beach Tract." The second bond issue was dated June 1, 1925, and was payable June 1, 1927, and was extended for five years making it payable June 1, 1932, interest payable on the first days of June and December of each year. The agreement on which this action was predicated was made June 1, 1928, between Suttles as the representative of Ball and the second mortgage bondholders.

The evidence shows that Suttles as the authorized representative of Ball negotiated with the second mortgage bondholders and made the agreement between them and Ball on which this action is grounded. It is further shown that the second mortgage bondholders performed the agreement fully on their part, that Ball created the corporation (St. Johns Beach Development Company) which he agreed to create, that he negotiated with counsel to foreclose the second mortgage, that his corporation took title to "Atlantic Beach Tract" and that he paid three installments of interest on the bonds. In other words, Ball paid out approximately $25,000 in compliance with his part of the agreement and in fact complied with it in every material respect except foreclosing the second mortgage and securing the bonds against future contingencies. He breached the agreement before complying in the latter respect and now contends that there was no meeting of the minds.

It is true that there is much evidence which defendant contends points to the fact that the plaintiff declared on a contract with Ball and attempted to prove a contract with the "Dupont Interests," that he declared on a contract with Ball to meet payments on the second mortgage bonds and

attempted to prove a contract with the "Dupont Interests" to replace the second mortgage bonds with good and ample securities at the conclusion of the foreclosure proceedings. Much of this evidence is confusing, some of it is immaterial but our conclusion is that the essential elements of the contract declared on were proven, that Ball accepted its terms, and that there was no material variance between the proof and the agreement. There was ample showing of Suttles' authority to act for Ball who must have considered the agreement perfected and closed else he would not have expended so much in compliance with its terms on his part.

Was the agreement declared on within the statute of frauds, Section 3872, Revised General Statutes of 1920, Section 5779, Compiled General Laws of 1927?

Counsel contends that the motion for directed verdict was granted in response to the affirmative of this question. It is admitted that the contract was oral, no part or memorandum of which was in writing, signed by the party to be charged. It is also admitted that the time within which the contract was to be performed was not stated.

The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos. To accomplish this, the statute requires that all actions based on agreements for longer than one year must depend on a written statement or memorandum signed by the party to be charged. The statute should be strictly construed to prevent the fraud it was designed to correct and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection. 25 R. C. L. 442.

In McPherson v. Cox, 96 U. S. 464, 24 L. Ed. 746, it was held that the statute of frauds applies only to con-

tracts which by their terms are not to be performed within a year, and does not apply because they may not be performed within that time. In other words, to make a parol contract void, it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made. This holding is supported by Peter v. Compton, Skinner 353, 90 Eng. Rep. 157, decided in King's Bench by Lord Holt.

When, as in this case, no definite time was fixed by the parties for the performance of their agreement and there is nothing in its terms to show that it could not be performed within a year according to its intent and the understanding of the parties, it should not be construed as being within the statute of frauds. 25 R. C. L. 456, and cases cited.

The general rule so stated is subject to the qualifying rule that when no time is agreed on for the complete performance of the contract, if from the object to be accomplished by it and the surrounding circumstances, it clearly appears that the parties intended that it should extend for a longer period than a year, it is within the statute of frauds, though it cannot be said that there is any impossibility preventing its performance within a year. 25 R. C. L. 458.

To support his contention that the contract declared on was within the statute of frauds, defendant relies on that part of it providing "That defendant or his corporation would thereafter at all times meet the payments of principal and interest to become due on said second issue of bonds and would give protection to said second issue of bonds against the first mortgage bonds."

In our view, this provision does not render the agreement vulnerable to the statute of frauds. While the second mortgage bonds were not due for four years and the interest was payable semi-annually, they were by their terms sus-

ceptible of payment in full at any time upon notice given, the very purpose of their foreclosure was to get rid of all subsequent claims against them, discharge them promptly as they provided might be done, but if it developed that they could not be promptly discharged, a new contract was to be made for their payment. In other words, an agreement to buy and sell at a stated price, the vendee to take charge at the end of a period of years but with the option to take charge at any time prior to the termination of that period is not within the statute of frauds. Seddon v. Rosenbaum, 85 Va. 928, 9 S. E. 326.

In our view, the agreement sued on was clearly within the general rule as here stated. It contains no express provision that it should not be performed within a year nor is there anything embraced within its terms that shows conclusively that it was intended to run for more than a year. Under its terms, it is susceptible of performance within a year and the evidence shows that it was expected to have been performed within that time. When such is the case, even if actual performance runs beyond the year, it is not within the statute of frauds.

Another fact lending support to this view is that the contract was fully performed on the part of the plaintiff before action was brought. The rule is generally approved in this country that the statute of frauds applies only to contracts not to be performed on either side within the year and has no application to contracts which by intent were fully performed within the year on one side. If that rule is applied in this case, the plaintiff having performed the contract on his part within the year, the defendant cannot avail himself of the statute of frauds. Lowman v. Sheets, 124 Ind. 416, 24 N. E. 351; Smalley. v. Greene, 52 Ia. 241, 3 N. W. 78; Dant v. Head, 90 Ky. 255, 13 S. W. 1073; Blanding v. Sargent, 33 N. H. 239; City of

Tyler v. St. Louis Southwestern R. Co., 99 Tex. 391, 91 S. W. 1; Washburn v. Bosch, 68 Wis. 436, 32 N. W. 551; 25 R. C. L. 461.

Aside from all that has been said on this point, the very predicate for application of the statute of frauds, a loose or casual statement galvanized with frauds, is absent in this case. All negotiations of both parties to the contract, so far as the record discloses, were open and *bona fide* and made with the view of reaching an agreement satisfactory to the parties concerned.

Did the trial court commit error in striking counts two and three (common counts) to the declaration?

The trial court twice struck bills of particulars based on these counts. They were apparently stricken for the reason that the plaintiff could not. file a bill of particulars showing either "money received" or "account stated."

As a general proposition of law, general assumpsit rests on an implied promise coupled with an executed consideration or upon a legal duty resting upon the defendant, while special assumpsit rests on an express contract. which may be oral or written. General and special assumpsit are not generally available in the same action and to accomplish the same purpose, but this rule has its exceptions. Hazen v. Cobb, 96 Fla. 151, 117 So. 853.

In special assumpsit, there are numerous exceptions to the general rule as thus announced, one of which is that if the special contract declared on has been fully executed by the plaintiff and nothing remains but the payment of the consideration by the defendant, the plaintiffs may declare on the contract in special assumpsit or he may declare in general assumpsit on the common counts. We do not understand that under such circumstances, he could declare on both but other circumstances might arise in which he

could. Shipman's Common Law Pleading (Second Edition) 22.

In the case at bar, the plaintiff having performed the contract on his part, he had his option to declare on general or special assumpsit but we do not see in the circumstances related, warrant for declaring on both general and special assumpsit.

For the reasons stated herein, the judgment below is reversed. Other assignments have been examined but no reversible error is shown as to them.

Reversed.

WHITFIELD, BROWN, and CHAPMAN, J. J., concur.

ELLIS, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting).—It appears to me that plaintiff failed to prove a contract with Edward Ball.

ELLIS, C. J., concurs.

## ON REHEARING.

PER CURIAM.—A rehearing having been granted in this cause and the Court having further considered the cause upon the Transcript of the Record and upon the entire argument presented by Counsel for the respective parties, and being now fully advised in the premises, it is ordered and adjudged by the Court that the opinion rendered and filed in this cause and the judgment entered herein on October 13, 1937, be and they are hereby adhered to and that the judgment of the Circuit Court in this cause be and it is hereby reversed.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.