M. DANIEL FUTCH, Jr., Associate Judge.
Appellant, Texaco Boca Del Mar, appeals from a final judgment, entered upon a jury verdict, awarding $107,400 in damages to the appellee, a real estate broker. Appellant contends there was insufficient evidence to support the judgment. We agree and reverse.
Appellant was a partnership comprised of Texaco and Leadership Housing[1] in a joint venture to develop 2400 acres of land in Boca Raton. Appellant’s property was sold by an open listing whereby any broker or salesman could sell the property and collect a commission of 6%. The custom utilized by appellant was to pay a commission only upon the closing of a sales transaction. The Broker’s first contact with the appellant was in 1974 at which time the Broker inspected appellant’s land and received a price list from him. These price lists were periodically updated to reflect increased costs, changes in financial terms, etc. Parcel No. 73, the property that serves as the subject matter of the present controversy, was listed as a commercial property and subject to change in price and withdrawal from the listing without notice. In 1976, there was some correspondence between the broker and the appellant concerning this property and the possibility of rezoning this property to a residential classification. Subsequently, the broker found Sentinel Development Corporation as a potential purchaser, and Sentinel offered to purchase the property on October 20th, 1976. The offer, however, was contingent upon the property being rezoned to residential. This condition was unacceptable to the appellant and the offer was rejected. Officers of Sentinel testified that the offer was rejected because Texaco disapproved of the zoning contingency even though Texaco was willing to negotiate other terms and conditions aside from the zoning contingency. Between October, 1976 and October, 1977, the Broker kept in contact with both the appellant and Sentinel concerning Parcel 73. During this period of time, the appellant also continued to negotiate with Sentinel with regard to the potential sale of the property. Sentinel eventually presented the appellant with an offer to purchase Parcel 73. The offer somewhat matched appellant’s listing offer, but it also varied in several respects. First, the amount of downpayment payable directly to the appellant was much less than that prescribed by the listing offer. The dates for mortgage interest payments were altered as was the release of mortgage provisions. Sentinel’s offer included a clause which would allow the purchaser to enter upon the land prior to the sale and obtain information for the purpose of securing future financing. Most significantly, Sentinel’s offer was again contingent upon a rezoning of Parcel 73 to residential.
Ultimately, the appellant rejected Sentinel’s offer,[2] which, in conjunction with the appellant’s refusal to pay any brokerage commission to the Broker, precipitated a lawsuit. The Broker contended that it had earned its commission by producing a ready, willing, and able buyer. The parties are and were in disagreement as to the nature of the brokerage contract between them. Appellant’s position was that it is liable to pay a brokerage commission only upon the consummation of a sale. The Broker contends that he is entitled to a commission if he merely produces a “ready, willing and able buyer.” After a jury trial and a judgment in favor of the Broker, this appeal was taken by the appellant.
Appellant urges as error the trial court’s denial of its motion for a directed verdict *578 and its related motions for judgment n. o. v. and new trial. Although appellant propounds several reasons for reversal, we need discuss only one.
Assuming, arguendo, that the Broker established a prima facie case of his entitlement to a commission based upon his mere procurement of a ready, willing and able buyer, we find that there was a lack of substantial competent evidence to support the finding that Sentinel was in fact a ready, willing and able buyer. In order for a person to be a ready, willing and able buyer he must execute a binding contract of sale which contains terms prescribed or acceptable to the seller. Zaydon v. Wilder, 305 So.2d 81 (Fla. 3rd DCA 1974); Abel v. First Federal Savings and Loan Association of Manatee County, 199 So.2d 295 (Fla. 2nd DCA 1967); Wiggins v. Wilson, 55 Fla. 346, 45 So. 1011 (1908). The appellant’s listing offer only included financial terms and conditions. There were many other items of sale which were subject to negotiation and compromise. In fact, Sentinel’s initial offer referred to such additional items (zoning, entry on land, etc.), and it even attempted to vary some of the financial terms and conditions. As previously stated, when there are terms and conditions of sale not expressly made part of a listing offer, but which are instead subject to further negotiations, a prospective purchaser is not a ready, willing and able buyer until there is agreement upon such additional matters between buyer and seller. Mead Corporation v. Mason, 191 So.2d 592 (Fla. 3rd DCA 1966); Leon Realty, Inc. v. Bradwell, 271 So.2d 771 (Fla. 1st DCA 1972). Where there are continued negotiations without final agreement, the broker has not procured a ready, willing and able buyer at terms acceptable to the seller. McAllister Hotel v. Porte, 98 So.2d 781 (Fla.1957).
In a complex real estate transaction of the sort present in the case sub judice, there are often many conditions of sale that are extrinsic to the financial terms of the sale. These additional details often refer to the very basis of the bargain at hand, and no buyer can be considered ready, willing and able until such time as there is a meeting of minds between seller and purchaser in regard to such additional, material details. See, McAllister, supra, and Shuey v. Wolf, 107 So.2d 195 (Fla. 2nd DCA 1958). Furthermore, when an offer is materially different from that contained in a seller’s listing, the offer becomes a counter-offer, and the seller is not liable to a procuring broker if the seller rejects such a counteroffer. Salzer v. Anderson, 238 So.2d 457 (Fla. 3rd DCA 1970); Taylor v. Dorsey, 155 Fla. 67, 19 So.2d 876 (1944). A variance in stated financial terms that is unacceptable to the seller, relieves the seller of the obligation to pay a brokerage commission. C. W. Kistler Co. v. Hotel Martinique, 44 So.2d 288 (Fla.1950); Singer v. Grant, Inc., 151 So.2d 52 (Fla. 3rd DCA 1963); Peterson v. Kilbee, 197 So.2d 318 (Fla. 4th DCA 1967). Such a variance from the seller’s original financial terms occurred in the present case. There can be little doubt that when a prospective buyer’s offer of purchase is based upon a contingency of rezoning, such a buyer is not a ready, willing, and able one. When the seller opts to reject such an offer, he is relieved of the liability to pay a brokerage commission. See, Futura Realty, Inc. v. Kasser, 325 So.2d 71 (Fla. 3rd DCA 1976); Wilder v. Burton, 317 So.2d 776 (Fla. 3rd DCA 1975).
Sentinel’s response to appellant’s listing offer constituted a counter-offer. Clearly, Sentinel did not accept the appellant’s initial offer in toto. Moreover, there were many other topics of sale that needed to be discussed and settled between Sentinel and the appellant. These parties were never able to conclude their negotiations over these matters with a mutual agreement. Given such a framework of reference, Sentinel was never a ready, willing and able buyer, and consequently, the Broker was not entitled to a commission for the procurement for such a reluctant purchaser.
Since the judgment in favor of the Broker was necessarily predicated upon a jury finding that Sentinel was a ready, willing *579 and able buyer, we must reverse that judgment.
REVERSED.
DOWNEY and GLICKSTEIN, JJ., concur.

. Leadership Housing was later replaced as a partner and the new partnership consisted of Texaco and Boca Del Mar.

. The appellant was willing to vary some of the financial terms of its listing offer to accommodate Sentinel, but the appellant adamantly refused to accept the zoning contingency.