411 So.2d 358 (1982)
CENTRAL NATIONAL BANK OF MIAMI, Appellant,
v.
CENTRAL BANCORP., INC., a Florida Corporation, Central Bank and Trust Company, a Florida State Banking Institution, and Central Bank of North Dade, a Florida State Bank Institution, Appellees.
No. 81-958.
District Court of Appeal of Florida, Third District.
March 30, 1982.
*360 Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin and Joel D. Eaton, Miami, for appellant.
Gars, Dixon & Shapiro, Bruce Rogow, Miami, for appellees.
Before NESBITT, FERGUSON and JORGENSON, JJ.

ON REHEARING
FERGUSON, Judge.
Central National Bank of Miami, defendant below, appeals from a final judgment ordering specific performance of an alleged oral agreement with appellee, Central Bancorp, Inc., that appellant would not use the word "Central" in its business name. The oral agreement also provided for compromise of certain debts owed to appellee by appellant and permitted appellant to prematurely terminate a pre-existing agreement between the parties.
As its first point on appeal, appellant claims that the trial court lacks subject-matter jurisdiction because 12 U.S.C.A. § 30 preempted the relief sought by Central Bancorp, Inc., or, alternatively, fundamental error occurred when the trial court entered a final judgment containing terms directly in conflict with the requirements of federal law. Although appellant does not draw the distinction, we understand these alternative arguments to be based on the difference between exclusive federal jurisdiction and federal preemption. The New York district court in Billy Jack for Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, 511 F. Supp. 1180 (S.D.N.Y. 1981) provides an excellent discussion of this difference. We borrow from the conclusions of that court as follows. Preemption occurs if state law has been supplanted by substantive federal law so that federal law must be applied to determine the merits of a plaintiff's claim. Preemption is essentially a conflict-of laws question. Exclusive federal jurisdiction occurs when only certain specified federal instrumentalities have jurisdiction to hear the case. Federal preemption, by itself, in no way determines the court in which an action may be brought, but only prescribes the law that is to be applied to the claim. Exclusive federal jurisdiction, by itself, does not govern the applicable law, but only the forum empowered to hear the action. See generally 1A Moore's Federal Practice, § 0.160 at 189 (2d ed. 1981). In the absence of an express directive, the state courts have jurisdiction over federal-question cases concurrently with the federal courts. 13 C. Wright, A. Miller and E. Cooper, Federal Practice & Procedure, § 3527 at 124 (1975).
We find no provision in 12 U.S.C.A. § 30[1] or any other section of the National Banking Act  and appellant points us to none  that expressly directs that cases involving name change in a national bank be heard exclusively in the federal courts. Cf. 12 U.S.C.A. § 94 (venue in either federal or state court). The issue, it appears to us, is one of preemption. Compare First National Bank of Aberdeen v. Aberdeen National *361 Bank, 627 F.2d 843 (8th Cir.1980) (court lacked power to remove to federal court because Section 30 of the National Bank Act did not preempt the common law of unfair competition insofar as it applied to name changes not yet approved by Comptroller) with State of North Dakota v. Merchants National Bank and Trust Co., 634 F.2d 368 (8th Cir.1980) (Section 30 preempts state fair-competition laws after name change has been approved).
The test for determining whether the federal law has preempted the state law is (a) whether there is actual conflict between the federal and state law, or (b) whether the state law interferes with the purpose for which the National Banks were created or impairs the efficiency of the federal agencies. State of North Dakota v. Merchants National Bank and Trust Co., supra at 378, citing Ray v. Atlantic Richfield Co., 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179, 188 (1978). The provision of 12 U.S.C.A. § 30 that any name change of a national bank is to be submitted to the Comptroller of the Currency for approval after recommendation of change by vote of shareholders owning two-thirds of the stock of that association was clearly intended to preempt any state law to the contrary. In order to prevent conflict between 12 U.S.C.A. § 30 and orders of state courts applying the remedy of specific performance, we must review the specific order with respect to these provisions. In this case, the trial court correctly applied the federal law directing appellant to submit proposed names to the Comptroller's office for approval. Appellant also argues that the order of specific performance is invalid as conflicting with the requirement that vote of shareholders owning two-thirds of the stock must vote for name change. We find this argument without merit because (a) the vote required is that of shareholders owning two-thirds of all stock, (b) the record contains evidence that shareholders owning two-thirds of the stock agreed to and intended to change the bank name, therefore, a vote would merely formally record this fact, and (c) the court's directive that, "Within (30) days from the date here-of, Defendant [appellant] shall file all applications, documents, resolutions, etc., necessary for Defendant to obtain formal approval from all appropriate authorities of the proposed name change..." encompasses the required evidence of approval by vote of the name change by shareholders owning two-thirds of the stock.
As the second point on appeal, the appellant claims that Central Bancorp, Inc. failed to prove a prima facie case, or alternatively failed to prove this case by clear, definite and certain evidence entitling them to a decree of specific performance. We find the record evidence with respect to the intent and agreement of the board of directors to a name change, and with respect to the authority of Mr. Revilla to enter the agreement sufficient to support the finding of the trial court that there was a binding oral agreement with Central National Bank of Miami. We also find no error in the granting of specific performance. Evidence was presented to the trial court to prove the existence of the contract, including evidence that on the day after the alleged oral contract was entered, the defendant filed with the Regional Administrator of National Banks an application for a change in corporate title, applying for permission to change appellant's name to American National Bank of Miami, and that after the Comptroller denied approval of this name, the new president of the appellant bank represented to appellees that Central National Bank was going to reapply for a different name, but later decided not to because it would cost too much money. There was also evidence that appellants complied with the alleged agreement by paying appellees the compromised amount of expenses. Appellant contends that it cannot be bound to an oral agreement entered into by its unauthorized agent on a theory of estoppel or ratification because these theories of recovery were neither pled nor argued. We find inapposite the cases relied upon by appellant  Dysart v. Hunt, 383 So.2d 259 (Fla. 3d DCA 1980), pet. for rev. denied, 392 So.2d 1373 (Fla. 1980) and Cortina v. Cortina, 98 So.2d 334 *362 (Fla. 1957)  where judgments were reversed because the issues were never tried by express or implied consent. Here the main issue was whether there was an oral agreement between the parties. That issue was thoroughly litigated. It is of no import, and certainly not unusual, that the theory upon which the trial court correctly tried and resolved the question was expressly identified for the first time in written final judgment.
As the third point on appeal, appellant claims that appellees' original action was barred by the statute of frauds, Section 725.01, Florida Statutes (1979). We reject the argument that because appellant was permanently enjoined from using its existing name as long as it remained in business, the agreement was within the statute of frauds. Under the terms of the agreement, the act required to be performed by appellant, is to change its name so as to delete the word "Central." The parties contemplated that the change in name would be effected within one year.
Intent of the parties is generally the determining factor as to whether all the terms of a contract are to be performed within a year. When no definite time is fixed by the parties for performance of the agreement, and there is nothing in its terms to show that it cannot be performed within a year according to the intent and understanding of the parties, it will not be construed as being within the statute of frauds. Yates v. Ball, 132 Fla. 132, 181 So. 341 (1937). In this case, Central Bank of Miami and Central Bancorp not only contemplated a single act of name change to be performed within one year, but there was nothing in the terms of the agreement evidencing that it could not be performed within the year.
The cases cited by appellant, Weinsier v. Soffer, 358 So.2d 61 (Fla. 3d DCA 1978), cert. denied, 365 So.2d 714 (Fla. 1978); Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975); Food Fair Stores, Inc. v. Vanguard Investments Co. Ltd., 298 So.2d 515 (Fla. 3d DCA 1974), cert. denied, 305 So.2d 209 (Fla. 1974); Rattan and Bamboo Shop, Inc. v. Rutter, 147 So.2d 11 (Fla. 3d DCA 1962), are easily distinguished in that the oral agreements in each of those cases contemplated additional affirmative activity to take place after more than one year.
As the fourth point on appeal, appellant claims that appellees' original action was barred by the statute of limitations. Section 95.11(5)(a), Florida Statutes (1979) requires that an action for specific performance of a contract be brought within one year. Consistent with Florida law, this means that the statute of limitations begins to run on the date the contract is breached. Cf. Kilbreath v. State Farm Mutual Automobile Insurance Co., 401 So.2d 846 (Fla. 5th DCA 1981); Airport Sign Corp. v. Dade County, 400 So.2d 828 (Fla. 3d DCA 1981). Here, appellant did apply for a name change prior to the sixth-month period. When this name change was denied by the Comptroller in January of 1978, appellant reassured appellees it would reapply. Under the circumstances, we find no error in the conclusion of the trial court that the breach occurred only after appellant informed appellees it was not going to reapply for a name change, sometime in August of 1978. This suit was filed on March 29, 1979, within a year of that breach.
As the fifth point on appeal, appellant claims that the original action was barred by the April 14, 1978 accord and satisfaction. We find no reversible error in the finding of the trial court that the letter of April 14, 1978 did not constitute an accord and satisfaction as to the name change. That letter, written upon the request of appellant, and according to appellee agreed to only after it was assured that appellant would proceed with the name change, acknowledged that receipt of checks from appellant constituted a complete satisfaction of outstanding expenses previously billed. The letter was silent as to any obligation to change appellant's name. See, e.g., Rudick v. Rudick, 403 So.2d 1091 (Fla. 3d DCA 1981); Hannah v. James A. Ryder Corp., 380 So.2d 507 (Fla. 3d DCA 1980).
Affirmed.
NOTES
[1] 12 U.S.C.A. § 30 provides:

Any national banking association, with the approval of the Comptroller of the Currency, may change its name or change the location of the main office of such association within the limits of the city, town or village in which it is situated. Any national banking association, with the approval of the Comptroller of the Currency, may change the location of the main office of such association to any other location outside the limits of the city, town, or village in which it is located, but not more than thirty miles distant, by the vote of shareholders owning two-thirds of the stock of such association. A duly authenticated notice of the vote and of the new name or location selected shall be sent to the Comptroller of the Currency; but no change of name or location shall be valid until the Comptroller shall have issued his certificate of approval of the same.