856 So.2d 1117 (2003)
LUNDSTROM REALTY ADVISORS, INC. and Senior Housing Solutions, Inc., Appellants,
v.
SCHICKEDANZ BROS.-RIVIERA LTD., a Florida Limited Partnership, and Schickedanz Enterprises, Inc., the corporate general partner of Schickedanz Bros.-Riviera Ltd., Appellees.
No. 4D02-3594.
District Court of Appeal of Florida, Fourth District.
October 22, 2003.
*1119 Michael J. Ryan, Tequesta, for appellants.
Rod Tennyson of Rod Tennyson, P.A., West Palm Beach, for appellees.
STEVENSON, J.
Appellants, Lundstrom Realty Advisors, Inc. and Senior Housing Solutions, Inc., both owned by Daniel Lundstrom, brought suit against Schickedanz Bros.-Riviera Ltd. and Schickedanz Enterprises, Inc. (hereinafter collectively referred to as Schickedanz), as a result of a series of failed real estate-related transactions. Lundstrom challenges the trial court's dismissal of counts I through VI of the first amended complaint; the dismissal of count I of the second amended complaint; and the grant of summary judgment as to count II of the second amended complaint in favor of appellees. For the reasons which follow, we affirm in part and reverse in part.
A review of the procedural history of this case is helpful. The first amended complaint contained six counts: counts I through IV dealt with a parcel of property known as "Parcel F" at the Woodbine subdivision in Riviera Beach (the Woodbine property); and counts V and VI dealt with property located in Port Charlotte, Florida (the Port Charlotte property). Counts I and II were brought by Lundstrom Realty, while counts III through VI were brought by Senior Housing Solutions.
Count I claimed that Schickedanz breached an oral contract for a real estate commission after Lundstrom Realty procured a buyer for the Woodbine property. Count II was an alternative claim to count I for breach of a written contract, alleging that the writings between the parties, "although not a formal listing agreement per se, taken together constitute a written listing agreement."
Count III alleged that, in failing to close on the Woodbine property, Schickedanz breached an oral contract for Senior Housing Solutions to perform developer/consulting services in relation to the property. Count IV was an alternative claim for breach of a written contract, alleging that the writings between the parties sufficiently defined their rights and duties so as to constitute a written agreement.
Count V alleged that Schickedanz breached its fiduciary duty of an oral partnership agreement in connection with the Port Charlotte property. Like the other *1120 counts, count VI was an alternative claim for breach of fiduciary duty regarding a written partnership agreement.
Without discussion, the trial court dismissed the first amended complaint with leave to amend. Lundstrom thereafter filed its second amended complaint, which was modified to include only two counts: the claim for the alleged breach of an oral contract for real estate commission by Lundstrom Realty relative to the Woodbine property (count I), and the claim by Senior Housing Solutions for breach of fiduciary duty of an oral partnership agreement in connection with the Port Charlotte property (count II). Thus, only counts I and V of the first amended complaint were re-alleged.
Schickedanz moved to dismiss the second amended complaint. The trial court granted the motion to dismiss as to count I (the oral real estate commission claim), but denied it as to count II (the oral partnership agreement claim). Thus, only Senior Housing Solutions remained as plaintiff. Count II, however, was soon disposed of by motion for summary judgment. With final orders issued disposing of both counts of the second amended complaint, this appeal followed.
As it relates to the claim that the trial court erred in dismissing the first amended complaint, we find that some of the claims have not been preserved for appeal. Though the trial court granted Lundstrom leave to amend, in the second amended complaint, Lundstrom re-alleged only two of the six claims: the oral real estate commission claim and the oral partnership agreement claim. Where leave to amend is granted and an amended complaint is filed without an attempt to re-allege the claims dismissed without prejudice, those claims are considered abandoned. See Feigin v. Hosp. Staffing Servs., Inc., 569 So.2d 941 (Fla. 4th DCA 1990). Thus, we will consider error only as it relates to the claims re-alleged in the second amended complaint.

The Oral Real Estate Commission Claim
We find that the trial judge erred in dismissing Lundstrom Realty's cause of action for breach of an oral contract to pay a real estate commission. While the trial court did not state the grounds upon which it granted the motion to dismiss, we can find no legal impediment to the cause of action as pled. The complaint alleged that Lundstrom Realty, a real estate brokerage firm, owned by Daniel Lundstrom, a registered real estate broker licensed to do business in Florida, had an oral agreement to perform real estate brokerage services for Schickedanz by soliciting a Letter of Intent from Merrill Gardens, L.L.C., to purchase the Woodbine property. According to the complaint, if the Letter of Intent was obtained with the conditions specified, Schickedanz agreed that it would sell the property to Merrill Gardens and pay Lundstrom a commission of $27,000. Lundstrom alleged that it obtained this Letter of Intent from Merrill Gardens, but Schickedanz refused to sign it. According to the complaint, "[t]his refusal was contrary to the promise of Waldemar Schickedanz as agent for Defendants that they would agree to the Letter of Intent if it was presented."
It is well established in Florida that a commission for services rendered as a real estate broker may be based upon an oral agreement. See Coral Gates Props. v. Hodes, 59 So.2d 630 (Fla.1952); Kerdyk v. Hammock Oaks Estates, Inc., 342 So.2d 833 (Fla. 3d DCA 1977). Generally, a real estate broker employed to effect the sale of property is not entitled to a commission until the broker procures a binding contract of purchase in the terms specified by the principal or actually effects a sale of *1121 the property. See MacGregor v. Hosack, 58 So.2d 513 (Fla.1952); Price v. Rogers Enters., 418 So.2d 1243 (Fla. 4th DCA 1982); Texaco Boca Del Mar, Inc. v. Sentinel Dev. Corp., 402 So.2d 576 (Fla. 4th DCA 1981). The instant contract is a bit unorthodox since, according to the allegations, Lundstrom was required only to obtain a Letter of Intent in order to earn his commission.[1] Nevertheless, we can find no authority suggesting that a licensed broker and principal are not free to tailor their contract in such a way as to meet their particular needs and preferences. Accordingly, it was error for the trial court to have dismissed count I of the second amended complaint.

The Oral Partnership Agreement Claim
We also conclude that the trial court erred in granting summary judgment as to count II of the second amended complaint since there exist genuine issues of fact with regard to this claim. Daniel Lundstrom's affidavit in opposition to the motion for summary judgment provided in pertinent part as follows:
2.... Waldemar Schickedanz and I made a deal to develop own and operate Adult Living Facilities (hereinafter "ALF(s)"), together, through our respective companies, and we were to be 50/50....
3. I presented the Port Charlotte project property (later to be known as Lexington Manor) to Waldemar Schickedanz based on the information provided by John Goode. Mr. Schickedanz was unequivocal that he had no interest in pursuing this site as a potential ALF site for our venture. This happened prior to May 14, 1998....
4. [Later], Mr. Goode and Mr. Schickedanz made some sort of agreement to agree without me prior to August 18, 1998....
5. Between February, 1998 and August 18, 1998, my company pursued the investigation of more than fifty (50) possible sites for our venture at cost of time and money.... This was done with the knowledge of Waldemar Schickedanz; and Mr. Schickedanz knew I was acting exclusively on our behalf and in our interest because I told him verbally and in writing.
. . . .
8.... The Port Charlotte site that is now the site of Lexington Manor ALF was presented to Waldemar Schickedanz by me as an ALF site for consideration by our partnership.... Mr. Schickedanz said he had no interest; but then he dealt directly with Mr. John Goode and cut me out of the deal. There is no question that this site now boasts a completed project owned in part by an affiliate company of Mr. Waldemar Schickedanz.
9. By August 18, 1998, it was clear that Wally Schickedanz had decided to end our relationship.
Lundstrom's cause of action in count II of the second amended complaint sounds in breach of fiduciary duty stemming from an alleged partnership relationship. See § 620.8404, Fla. Stat. (2002)(partner owes partnership fiduciary duty of loyalty). In granting the motion to dismiss, the trial judge cited a number of different reasons why, in the court's view, this cause of action was legally untenable. We will consider those reasons in turn. First, the *1122 trial court correctly noted that the alleged oral partnership agreement is governed by the 1995 Revised Uniform Partnership Act, chapter 620, Florida Statutes. The trial court then went on to reason that since the Partnership Act gave Schickedanz the unqualified right to dissociate himself from Lundstrom, and there were no tangible assets in the partnership at this time (August 18, 1998), Lundstrom would have no right to any damages or a share in assets or profits. In this regard, we believe that the trial court mis-perceived the gravamen of Lundstrom's cause of action. Lundstrom sought damages for Schickedanz's alleged breach of fiduciary duty in cutting him out of the deal while the partnership was still viable; Lundstrom did not claim an ownership interest in any partnership assets.
The trial court also ruled that the statute of frauds was applicable and precluded the claim since the agreement had "no limit in time." This too, was error. Florida's statute of frauds provides in relevant part:
No action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof, ... unless the agreement or promise upon which such action shall be brought, ... shall be in writing....
§ 725.01, Fla. Stat.
When an oral agreement is silent as to time, yet capable of performance within one year, the parties' intent will control to determine whether the statute of frauds bars enforcement:
[W]hen no time is agreed on for the complete performance of the contract, if from the object to be accomplished by it and the surrounding circumstances, it clearly appears that the parties intended that it should extend for a longer period than a year, it is within the statute of frauds, though it cannot be said that there is any impossibility preventing its performance within a year.
Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (1937). Additionally, to be within, and thus barred by, the provision in the statute of frauds concerning agreements "not to be performed within the space of one year from the making thereof," it must be shown that neither party's performance was intended to be complete within one year. See Fla. Pottery Stores of Panama City, Inc. v. Am. Nat'l Bank, 578 So.2d 801 (Fla. 1st DCA 1991).
In the instant case, Lundstrom argues that the object of the agreement was capable of performance within one year as it merely required the identification of a building site, a period of due diligence, and then an agreement to take title and develop the property. On the other hand, appellee maintains that the alleged agreement was to last indefinitely and was not intended to be performed within one year. While the complaint could be read as suggesting an ongoing business relationship, because it is unclear, a factual question exists as to the intent of the parties, precluding summary judgment. On remand, the finder of fact must determine, "from the object to be accomplished" by the agreement and the "surrounding circumstances," whether the parties intended that the agreement was not to be performed within the space of one year. See Yates, 181 So. at 344; see also § 725.01, Fla. Stat.
Next, we conclude that the trial judge erred in finding that the claim was barred by the statute of limitations. The trial court found that the claim was barred by the two-year limitations period under Florida Statutes section 95.11(4)(c)(action to recover wages) and the one-year limitations period under section 95.11(5)(a)(action for specific performance of a contract). *1123 This point requires little discussion as it is evident from the allegations in the complaint that sections 95.11(4)(c) and (5)(a) are not applicable to the instant case. As Lundstrom correctly points out, he neither seeks payment of wages nor specific performance of the oral agreement. Instead, either section 95.11(3)(k)(breach of contract) or section 95.11(3)(o)(intentional tort) is applicable here as the action is for breach of fiduciary duty stemming from a partnership agreement. In either event, Lundstrom had four years to bring the action, not the one and two years found by the trial court.
We have reviewed the other arguments advanced by appellees in support of the trial court's order granting summary judgment, but find no merit in them. Accordingly, the final orders on appeal (1) dismissing count I of the second amended complaint with prejudice and (2) granting summary judgment as to count II of the second amended complaint in favor of the appellees are reversed. This case is hereby remanded for further proceedings consistent with this decision.
AFFIRMED in part, REVERSED in part and REMANDED.
GUNTHER and STONE, JJ., concur.
NOTES
[1] Lundstrom alleged that the Letter of Intent contained all of the essential terms of a standard real estate transaction, including description, price, provision for the payment of closing costs, and other details. In essence, Lundstrom argues that the Letter of Intent was the functional equivalent of an offer to purchase the property.