[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13596
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-21913-UU


MOHAMMED SAEME,

Plaintiff-Appellant
Cross Appellee,

versus

PHILIP LEVINE,
BARON WELLNESS, LLC,

Defendants-Appellees
Cross Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 20, 2012)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

In this diversity suit, Plaintiff-Appellant Mohammed Saeme appeals from the district court's grant of summary judgment to Defendants-Appellees Philip Levine and Baron Wellness, LLC ("Baron").  Levine and Baron cross-appeal the district court's denial of their two motions for sanctions against Plaintiff Saeme and his attorneys.  After our review of the record and the parties' briefs on appeal, we affirm both (1) the district court's grant of summary judgment to Levine and Baron, and (2) the district court's denial of Levine and Baron's motions for sanctions.

## I.  BACKGROUND

### A.    Factual Background

This appeal arises out of a dispute between Plaintiff Saeme and Defendants Levine and Baron over the existence of an agreement to carry out a joint business venture.  Plaintiff Saeme is a medical doctor who resides in Switzerland.  Defendant Levine is a businessman with experience in managing business ventures related to the cruise ship industry.  Defendant Baron is a Florida LLC formed and controlled by Defendant Levine.

Starting in 2005, Plaintiff Saeme and Defendant Levine began discussing the possibility of creating a business venture that would provide spa services to cruise ship passengers.  These discussions continued over several years.  In

2

January 2010, Saeme and Levine exchanged e-mails and agreed to meet in person to discuss pursuing this possible business venture. Part of the possible business venture involved using the Clinique la Prairie ("CLP") brand and CLP products. CLP is a health, beauty, and wellness center located in Switzerland. Defendant Levine had previously explored acquiring the CLP brand and was familiar with CLP's principals.

Plaintiff Saeme and Defendant Levine dispute what happened during their January 2010 meetings, and, specifically, what was agreed to during those meetings. Saeme claims that, during these meetings, he and Levine formed an oral contract. According to Saeme, in this oral contract, he and Levine agreed: (1) "to create a jointly owned entity which would obtain a license from CLP"; (2) that the jointly owned entity would "market [the possible business venture's] services to cruise lines"; (3) that Saeme would be in charge of the possible business venture's operations while Levine would be in charge of securing clients and the CLP license; and (4) that Saeme and Levine would contribute capital, realize profits, and bear losses "on a fifty-fifty basis." Levine, on the other hand, contends that their discussions resulted in a generalized "gentlemen's agreement" to attempt to create a business together, but that they did not agree on several key terms, including (1) who would contribute capital to the possible business venture; and

3

(2) how the business responsibilities would be divided up.

On January 16, 2010, Plaintiff Saeme and Defendant Levine met with representatives of CLP and with Larry Pimentel, the CEO of Azamara Cruises and a potential customer of the possible business venture, to discuss the possibility of Saeme and Levine obtaining a license to use and promote CLP's brand and products. Saeme and Levine did not reach an agreement with CLP regarding the licensing of CLP's brand and products at this meeting. After this meeting, Saeme and Levine continued to negotiate a license agreement with CLP's representatives.

Also after the January 2010 meeting with CLP's representatives, on January 30, 2010, Plaintiff Saeme e-mailed to Defendant Levine a draft partnership agreement. Levine did not agree to the draft agreement and indicated to Saeme that he wanted to discuss the agreement further. No written partnership agreement was ever executed between Saeme and Levine.

License negotiations between Plaintiff Saeme, Defendant Levine, and CLP continued during the early months of 2010. Over the course of these negotiations, Saeme and Levine agreed that Levine would form an American company, Baron, to receive and hold the CLP license. They further agreed that Baron would then sub-license the CLP license to an offshore company owned by Saeme, for use in the possible business venture. While the negotiations with CLP progressed,

4

Saeme and Levine worked together on several fronts in furtherance of the possible business venture, including contacting potential clients and investigating potential office space.

On July 16, 2010, CLP and Baron executed a license agreement. Both Saeme and Levine reviewed the license agreement, and Levine signed it on behalf of Baron. After the CLP license agreement was signed, the possible business venture progressed no further.

Plaintiff Saeme and Defendant Levine dispute what precisely kept the venture from moving forward. Saeme alleges that, while he continued to market the venture and attempted to get its business operations up and running, Levine stopped promoting the venture and instead (1) sought to use the CLP license for his own benefit (rather than sub-licensing it to Saeme's offshore entity), and (2) focused his attention on other business pursuits. Levine claims that he did not stop working on the business venture, but instead, the venture was prevented from moving forward because Saeme did not prepare and present to Levine or to the venture's potential clients: (1) marketing materials, (2) a business plan, or (3) a sub-licensing agreement, as Saeme had agreed to do. While the potential business venture sputtered, Baron continued to hold the CLP license, pursuant to the licensing agreement.

## B.    Procedural History

On July 29, 2011, Plaintiff Saeme filed a three-count amended complaint, asserting claims for (1) breach of contract against Levine; (2) breach of fiduciary duty against Levine; and (3) conversion against Levine and Baron, concerning their wrongful misappropriation of the CLP license.  Specifically, Saeme alleged that he and Levine had entered into an agreement "to jointly operate the [v]enture" and that Levine was in breach of that agreement by "misappropriating a 100% ownership interest in the CLP license, and by otherwise failing and refusing to proceed with the [v]enture."  Saeme sought monetary damages and injunctive relief on all three counts.

Levine and Baron answered Saeme's amended complaint, denying many of the allegations contained therein and asserting various affirmative defenses. Among their defenses, Levine and Baron asserted that any "alleged joint venture agreement" between Levine and Saeme was unenforceable under Florida's statute of frauds because the agreement "was understood and intended by the parties to continue beyond a year from the date it was made."[1]

---

[1]Florida's statute of frauds provides that "[n]o action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof . . . unless the agreement or promise upon which such action shall be brought . . . shall be in writing and signed by the party to be charged therewith."  Fla. Stat. § 725.01. Pursuant to well-settled Florida law, "when the parties intended and contemplated that performance of the[ir] agreement would take longer than one year," the Statute of Frauds requires that an action to enforce that

6

During discovery, Defendants Levine and Baron filed two motions for sanctions against Saeme and his attorneys.  In their first motion, Levine and Baron sought sanctions against Saeme personally, pursuant to Federal Rule of Civil Procedure 37(c)(2), due to Saeme's failure to admit that he intended to reduce the terms of his alleged partnership agreement with Levine to writing.  In their second motion, Levine and Baron sought sanctions against Saeme's attorneys pursuant to Federal Rule of Civil Procedure 11, arguing that Saeme's claims were frivolous and that his factual allegations lacked evidentiary support.

Plaintiff Saeme moved for partial summary judgment on his breach of contract claim against Levine.  Defendants Levine and Baron moved for summary judgment on all three of Saeme's claims.

The district court granted Defendants Levine and Baron's motion for summary judgment as to all of Saeme's claims.  The district court concluded that, taking the factual record in the light most favorable to Saeme,

> it is clear from the object to be accomplished . . . and the surrounding circumstances that the agreement alleged by [Saeme] was intended to extend for a longer period than a year. . . . [T]he parties intended not only to form the corporate entities to support the Proposed Venture and

---

agreement must depend on a written statement or memorandum, signed by the party to be charged.  Dwight v. Tobin, 947 F.2d 455, 459 (11th Cir. 1991) (citing Yates v. Ball,181 So. 341, 344 (Fla. 1937)).  The parties' intent "may be inferred from the surrounding circumstances or the object to be accomplished."  Id. (internal quotation marks omitted).

7

> obtain the CLP License, but to operate an ongoing business marketing the license to cruise lines.

(first omission in original) (citation and quotation marks omitted).  The district court also noted that there was no record evidence to indicate that Saeme and Levine intended for the performance of their alleged partnership agreement to occur within one year, and "Florida courts have specifically held that an oral agreement to enter into a new business that will continue indefinitely is barred by the statute of frauds."

The district court rejected Plaintiff Saeme's contention that the alleged partnership agreement fell outside of the statute of frauds because the CLP license could have been obtained and the requisite corporate entities could have been formed within one year of Saeme and Levine's execution of their agreement.  The district court found no record evidence to support this contention, instead noting that Saeme himself had alleged that the agreement between himself and Levine extended to both the obtaining of the CLP license <u>and</u> the subsequent operation of a business based on that license.  Further, the district court stated that

> the notion that the parties intended to limit their agreement to obtaining the CLP License is belied by Saeme's position that Levine breached the Alleged Oral Agreement by his failure to continue to "promot[e]" the Proposed Venture and that Saeme suffered damages in the form of lost profits to be earned from the operation of the Proposed Venture. Saeme's theory of breach and damages assumes an oral agreement not

8

merely to obtain the CLP License, but to operate a profitable business venture.

(citation omitted).

Finding the alleged partnership agreement to be unenforceable under Florida's statute of frauds, the district court granted summary judgment to Defendant Levine on Plaintiff Saeme's breach of contract claim. Likewise, because: (1) Saeme had not demonstrated that Levine "undertook to perform any duties for him other than those embodied in the Alleged Oral Agreement"; (2) there was no record evidence to suggest that Levine ever agreed to advise, counsel, or protect Saeme, as the weaker party; and (3) there was no record evidence to suggest that Levine and Saeme engaged in anything other than arms-length business dealings, the district court granted summary judgment to Levine on Saeme's claim for breach of fiduciary duty. Finally, because Saeme relied on the alleged partnership agreement to demonstrate his right to possession of the CLP license, and that agreement was unenforceable, the district court concluded that Saeme's claim for conversion against Levine and Baron failed as a matter of law.

Following its order on summary judgment, the district court entered a separate order denying Defendants Levine and Baron's Rule 11 and Rule 37

9

motions for sanctions.  Thereafter, Saeme filed a Notice of Appeal from the district court's summary judgment order, and Levine and Baron filed a Notice of Appeal from the district court's order denying their motions for sanctions.

## II.  DISCUSSION

On appeal, Plaintiff Saeme argues that the district court erred in granting summary judgment to Defendant Levine on Saeme's breach of contract claim because the district court made erroneous factual determinations and inferences regarding whether Saeme and Levine intended for their agreement to have been performed within one year.  Saeme also argues that the district court erred in granting summary judgment to Levine and Baron on Saeme's breach of fiduciary duty and conversion claims because the district court erroneously concluded that these claims arose solely out of the unenforceable agreement.[2]

After reviewing the parties' briefs and the record, we find no reversible error and affirm the district court's grant of summary judgment to Levine and Baron.  Among other things, the district court did not err in concluding that (1) Saeme and Levine's oral partnership agreement contemplated the operation of

---

[2]We review a grant of summary judgment de novo, applying the same legal standards that bound the district court.  Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  Id.; see also Fed. R. Civ. P. 56(a).

a "profitable business venture"; (2) Saeme and Levine intended that the performance of their agreement take longer than one year; (3) Florida's statute of frauds barred Saeme from enforcing the oral partnership agreement against Levine; and (4) thus, the statute of frauds rendered the agreement unenforceable.

In addition, as noted by the district court, Saeme has not demonstrated: (1) that, even under the unenforceable agreement, Levine owed him any fiduciary duty; or (2) that, aside from the unenforceable agreement, Saeme had any basis from which to assert a legal entitlement to the CLP license. Therefore, Saeme's claims for breach of fiduciary duty and conversion must also fail. Accordingly, for the reasons stated in the district court's thorough and well-reasoned order dated June 12, 2012, we find no reversible error and affirm the district court's grant of summary judgment to Levine and Baron.

Furthermore, upon our review of the record, we conclude that the district court did not abuse its discretion in denying Levine and Baron's Rule 11 and Rule 37 motions for sanctions against Saeme and his attorneys. Likewise, Levine and Baron's request for appellate sanctions, made pursuant to Federal Rule of Appellate Procedure 38, is DENIED.[3]

---

[3]We review a district court's order on a motion for sanctions, whether that motion was filed pursuant to either Federal Rule of Civil Procedure 11 or 37, for an abuse of discretion. Souran v. Travelers Ins. Co., 982 F.2d 1497, 1506-07 (11th Cir. 1993) (Rule 11); Carlucci v.

11

**AFFIRMED.**

---

Piper Aircraft Corp., Inc., 775 F.2d 1440, 1447 (11th Cir. 1985) (Rule 37).