GULL LABORATORIES, INC., a Utah
corporation, Plaintiff,

v.

DIAGNOSTIC TECHNOLOGY, INC., a
New York corporation, Defendant.

Civ. No. 86–C–0899A.

United States District Court,
D. Utah, C.D.

Sept. 19, 1988.

Joseph C. Rust, Scott O. Mercer, Salt
Lake City, Utah, for plaintiff.

Charles C. Brown, Jeffrey B. Brown,
Budge W. Call, Salt Lake City, Utah, for
defendant.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDG-
MENT

ALDON J. ANDERSON, Senior
District Judge.

## INTRODUCTION

On August 17, 1985, plaintiff Gull Labor-
atories, Inc. (hereafter "Gull") and defend-
ant Diagnostic Technology, Inc. (hereafter
"DTI") entered into an agreement whereby
Gull granted DTI a non-exclusive license to
sell and distribute Gull manufactured prod-
ucts under DTI's label. The case has un-
dergone extensive discovery and has been
set for a trial on several occasions.

During a pre-trial hearing, this court permitted the revival of a motion for summary judgment filed by the defendant. The defendant claims that the contract, which is the subject of the lawsuit, has never been properly terminated because (1) a purported termination letter relied on by plaintiff did not seek to terminate the contract or give sufficient notice of termination pursuant to the contract provisions; (2) plaintiff has not identified any other alternative or substitute notice of termination; and (3) the purported termination letter operated as a waiver and estoppel against Gull to claim notice of termination.

Defendant further argues that plaintiff's second, third, and fourth causes of action should be dismissed on summary judgment because plaintiff has failed to make factual showings sufficient to support essential elements of these claims. The second cause of action alleges the unauthorized use of a picture owned by plaintiff and published by defendant in a monthly periodical. The third cause of action asserts that defendant breached the contract in question by contacting international distributors as well as customers and potential customers of Gull. The fourth cause of action charges DTI with intentionally interfering with plaintiff's economic relations.

As to defendant's first claim that the contract was not properly terminated, plaintiff argues that notice of default was not required because the contract is unenforceable for lack of mutuality. Gull alternatively argues that sufficient notice was given or was somehow not required because defendant had ignored previous notices of termination.

Plaintiff also contends that it has made a sufficient factual showing on the essential elements of the second, third, and fourth causes of action to survive summary judgment.

## DISCUSSION

1. The Validity of the Contract.

The first argument the court must consider is whether the contract is enforceable or void for lack of consideration or mutuality. Plaintiff argues that the contract lacks mutuality because defendant was not bound to order any goods or to do any affirmative act which would bind DTI to the contract. The only provision in the contract relating to quantity of goods is that the plaintiff is required to "fill the initial order . . . and fill subsequent orders placed by DTI." [1] The contract does not call for any minimum quantity (or any quantity, for that matter) to be purchased by the defendant.

Defendant contends, however, that it has furnished sufficient consideration by agreeing to (1) provide packaging materials, trade secrets and information regarding its marketing efforts to Gull; (2) design and purchase all necessary kit and component labels; and (3) market the diagnostic products which were the subject of the agreement. [2]

---

1. § 4.1 of the Agreement, the only provision pertaining to quantity of goods, provides, in pertinent part:

Gull agrees to sell to DTI during the term of this Agreement those products (the "Products") listed on Exhibit A.... Gull will fill the initial order for products within sixty (60) days after the date of receiving quality-controlled raw materials necessary to produce product(sic) meeting DTI's specifications. Gull will have sixty (60) days to fill subsequent orders placed by DTI.

2. Defendant relies on these three contractual provisions, respectively, for the argument that DTI provided consideration:

§ 5.2 Use of DTI's product name and/or trademarks for DTI labeled products will be at the sole discretion of DTI. Gull recognizes that the DTI name and logo and all trademarks and service marks utilized by DTI are the sole and exclusive property of DTI and may not be used by Gull for any purpose whatsoever except as permitted by this Agreement.

§ 5.5 DTI will design and purchase all necessary kit and component labels for DTI-labeled products manufactured by Gull. Gull will assist DTI by expediting the label production process with Gull's label supplier(s) and printer(s), but all orders for label processing will be against DTI purchase orders.

§ 6.1 DTI agrees to actively market all diagnostic products listed in Exhibit A [the products subject to the Agreement]. Active marketing includes the commitment of sales and marketing time and dollars to the same extent that DTI would typically commit to launching and maintaining new proprietary DTI products.

It is black letter law that a promise must be supported by consideration to be legally enforceable. *Resource Management Co. v. Weston Ranch,* 706 P.2d 1028, 1036 (Utah 1985). Consideration is an act or promise, bargained for and given in exchange for a promise. *Id.* The doctrine of "mutuality of obligation," or that both parties must be bound by the contract for it to be enforceable, has been criticized by commentators as over-generalized and improperly used to defeat contracting parties' justified expectation. *See* Restatement (Second) Contracts § 79; 1A A. Corbin, Contracts § 152. Consequently, the doctrine of mutuality has come to mean mutuality of consideration, i.e. that the parties to a contract must supply consideration to each other. *R.S. Mikesell Assoc. v. Grand River Dam Authority,* 627 F.2d 211, 213 (10th Cir.1980).

In the context of bilateral contracts, a promise exchanged for a promise imposes mutual obligations and is sufficient consideration to render any contract enforceable. *Resource Management Co. v. Weston Ranch, supra,* 706 P.2d at 1036. However, for the mutual promises of the parties to a bilateral contract to constitute the consideration for each other, the promises must be binding on both parties. *Id.* at 1036. "When there exists only the facade of a promise, i.e. a statement made in such vague or conditional terms that the person making it commits to nothing, the alleged promise is said to be illusory. An illusory promise, neither binds the person making it, (citation omitted) nor functions as consideration for a return promise." *Id.*

Certain types of contracts have been held unenforceable because one party's promise was not binding as to that party. For example, an "indefinite quantities contract," a contract where the buyer agrees to purchase and the seller agrees to supply whatever quantity of goods the buyer chooses to purchase from seller, is unenforceable because the buyer's promise from seller is considered illusory. *Mason v. United States,* 615 F.2d 1343, 1346 n. 5, 222 Ct.Cl. 436 (1980). This is because the buyer is not bound by his "promise" since he is not obligated to buy even a minimal amount of seller's product. *Id.* To make an indefinite quantities contract enforceable, the buyer must agree to purchase from seller at least a guaranteed minimum quantity of goods or services. *Id.*

In *Torncello v. United States,* 681 F.2d 756 231 Ct.Cl. 20 (1982) the court noted that "[w]ith an indefinite quantities contract ... the buyer's promise specifically is uncertain, and such a contract would fail for lack of consideration if it did not contain a minimum quantity term." *Id.* at 761. This is because "the buyer would be allowed to order nothing, rendering its obligation illusory and, therefore, unenforceable." *Id.*

The nature of the indefinite quantities contract is similar to a contract where one of the party's performance is optional. It is generally understood that a purported contract which reserves in either party an option to accept property, or contracts for future delivery thereof, the quantity of which delivery is dependent upon the will, wish, want, or desire of the other party, is void for lack of consideration and mutuality. *Ross v. Frank W. Dunne Co.,* 119 Cal.App.2d 690, 260 P.2d 104, 108 (1953). *See also J.C. Millett Co. v. Park & Tilford Distillers Corp.,* 123 F.Supp. 484, 493 (N.D.Ca.1954) (where one party's performance depends upon that party's wish, will or desire ... the promise of that party is illusory, is insufficient consideration for the other party's promise, making the contract void for lack of mutuality); *The Western Star Mill Co. v. Burns,* 305 P.2d 564 (Okla.1956) (where wholesale company agrees to sell feed without agreeing to any definite amount to be sold and with no restriction to curtail retailer from selling competing feed, such contract is unenforceable for lack of mutuality); *Patty v. Berryman,* 95 Cal.App.2d 159, 212 P.2d 937, 942 (1949) (where performance of a sale contract is optional with one party or quantity of goods involved rests in one party's sole discretion, no enforceable obligation of other party exists).

■ Applying the foregoing principles, this court is of the opinion that the contract

in this case is an "indefinite quantities" contract and is unenforceable for lack of consideration and mutuality. The first purported consideration, that DTI would furnish packaging materials, etc. is not adequate consideration. The contractual provision the defendant points to (§ 5.2 of the agreement) does not require DTI to provide *any* materials, trade secrets, or information. It merely recites that DTI's name and logo, along with any trademarks and service marks used by the defendant remain property of the defendant and may not be used by Gull except as provided in the agreement.

The second consideration defendant points to is § 5.5 of the agreement, which states that DTI will design and furnish labels for the Gull products manufactured on behalf of the defendant. By its own terms, this contractual provision only operates in the event DTI actually places orders, since there would be no need to design and furnish labels unless DTI actually ordered goods. Therefore, if DTI did not place any orders, it would not be required to furnish any design or labels.

The third purported consideration is that "DTI agrees to actively market all diagnostic products" included in the agreement (§ 6.1 of the agreement). This provision is not consideration provided by the defendant. It does not even place DTI at a detriment; it actually benefits DTI since any benefit coming from the marketing of the products would result in increased sales for DTI. As such, it is not consideration given by DTI to Gull; it is an illusory promise that benefits only the defendant.

Thus, this court holds that defendant's consideration either benefitted its company or was required only if the defendant actually ordered plaintiff's products. Consequently, it did not bind the defendant to the agreement in any way. Gull agreed to sell products to DTI, but DTI was under no obligation to purchase a single product or do any affirmative act. Therefore, the defendant's promise is illusory and the contract unenforceable for lack of consideration and mutuality.

In ruling that the contract is unenforceable, several claims and counterclaims are affected and can now be properly disposed of. These include plaintiff's claims for breach of contract and intentional interference with economic relation, as well as defendant's claims for improper termination of the contract and intentional interference with contractual relations.

*a.  Plaintiff's Breach of Contract Claim.*[3]

[2] Plaintiff's third cause of action alleges that DTI violated the contractual agreement by contacting customers and potential customers of Gull as well as international distributors.[4]

It is axiomatic that where consideration is lacking, there can be no contract. *General Ins. Co. of America v. Carnicero Dynasty Corp.,* 545 P.2d 502, 504 (Utah 1976). Moreover, a void contract is no contract at all; it binds no one and is a mere nullity. *Isenhower v. Isenhower,* 666 P.2d 238, 241 (Okla.App.1983). Since the contract is not enforceable, plaintiff may be able to assert a cause of action for payment of goods already shipped to the defendant, but cannot assert a claim that defendant's actions violated the agreement. Absent any enforceable contractual restrictions that limit defendant's ability to sell or market its products, DTI was merely a competitor in the same business with an invitation to order Gull's products. Therefore, this cause of action is no longer available and must be dismissed.

*b.  Plaintiff's Claim for Intentional Interference with Economic Relations.*

Plaintiff's fourth cause of action claims that defendant intentionally interfered with

---

3. The court found it strange that the plaintiff was pursuing a breach of contract claim while at the same time arguing that the contract failed for lack of mutuality. Plaintiff's counsel maintained at the hearing of this motion, however, that its main argument was that the contract lacked mutuality and was useful only as a memorandum of the party's intentions.

4. The contractual agreement provided to DTI a nonexclusive license to sell and distribute Gull-manufactured products in the United States and its territories. Gull claimed that by contacting international distributors and attempting to sell its products overseas, DTI breached this provision.

Gull's business by contacting a prospective international client about buying products from DTI. A party is liable for interference with prospective economic advantage if it is found that (1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff. *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982).

A major exception to the tort of intentional interference with economic advantage, however, is that competing parties are allowed to contact each others' potential customers. *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 811 (D.C.N.Y.1980). *See also Environmental Planning and Information Council of Western El Dorado County, Inc. v. Superior Court*, 680 P.2d 1086, 1090 (Cal.1984); *Edwards v. Anaconda Co.*, 115 Ariz. 313, 565 P.2d 190, 192 (App.1977). Competition is a major privilege justifying interference with economic advantage, and competitors are not liable for interference with contract if the interference advances the competitors' own interest and is not otherwise unlawful. *Seven Star Shoe Co., Inc., v. Strictly Goodies, Inc.*, 657 F.Supp. 917, 920 (S.D.N.Y.1987); *Nifty Foods Corp. v. A & P*, 614 F.2d 832, 838 (2d Cir.1980). Nevertheless, if a party breaches its contract for the purpose of damaging the other party's business and to obtain a personal advantage over that business, then a cause of action does exist for intentional interference with prospective economic relations. *Leigh Furniture and Carpet Co. v. Isom, supra*, 657 P.2d at 311.

■ Since there was no enforceable contract and no evidence suggesting that DTI was attempting to obtain a personal advantage over Gull, the competitor's exception to the business interference rule applies in this action, and the claim against the defendants for intentional interference is without merit.

c. *Defendant's Claim for Improper Termination of Contract.*

■ Defendant's first cause of action asserts that plaintiff wrongfully terminated the contract by breaching a number of its provisions, including improper termination of the contract and refusal to supply products in accordance with the agreement.

However, since this court has ruled that the contract is unenforceable, the agreement can be used, if at all, as a memorandum of the parties' intentions with regard to any particular order made by the defendant and filled by the plaintiff. Accordingly, the plaintiff was not required to supply products or terminate the agreement in accordance with the contractual provisions.

d. *Defendant's Claim for Intentional Interference with Contractual Relations.*

Defendant's fourth cause of action asserts that Gull's refusal to supply to DTI goods that were ordered caused DTI to lose $50,000 in sales and $1.7 million dollars in future sales. Once again, since the contract is unenforceable, Gull was under no obligation to fill any orders requested by DTI. Therefore, this cause of action must also fail.

2. Plaintiff's Cause of Action for Defendant's Unauthorized Use of Gull's Property.

■ Plaintiff's second cause of action alleges that the defendant, without authority from the plaintiff, published in a monthly periodical certain pictures of chemical reactions, which pictures were the property of Gull. Defendant claims that there are no facts which support such a claim.

The U.S. Supreme Court in *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) has recently stated that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Id.* at 323–24, 106 S.Ct. at 2553. Consequently, a "complete failure of proof concerning any essential element of the non-moving parties' case necessarily renders all other facts immaterial ... 'entitl[ing the moving party] to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of

her case with respect to which she has the burden of proof." *Id.* at 323, 106 S.Ct. at 2553. *See also Windon Third Oil and Gas Drilling Partnership v. FDIC*, 805 F.2d 342, 345 (10th Cir.1986); *First Security Bank of Utah v. Wright*, 521 P.2d 563, 567 (Utah 1974).

Plaintiff has furnished no evidence of any damage with respect to the second cause of action. Since plaintiff has brought forth no evidence establishing an essential element of this claim, this cause of action must also fail.

## CONCLUSION

The contract between plaintiff and defendant is unenforceable for lack of consideration and mutuality. Consequently, plaintiff cannot maintain its claims for breach of contract and intentional interference with economic relations because they were both based on the unenforceable contract.

As to defendant's claims, judgment is hereby entered for plaintiff on the counterclaim's causes of action for improper contract termination and intentional interference with contractual relations because the plaintiff was under no enforceable contractual obligation to give notice of termination or furnish products to the defendant.

This court also finds that since plaintiff has brought forth no evidence establishing damage, an essential element of its second cause of action that defendant used plaintiff's property without authorization, this claim is also dismissed.

What presently remains for the court's consideration is plaintiff's first cause of action for payment for goods delivered to the defendant, as well as defendant's second and third causes of action for unfair competition and defamation.