849 So.2d 367 (2003)
OFFICE PAVILION SOUTH FLORIDA, INC., Appellant,
v.
ASAL PRODUCTS, INC., a Florida Corporation, Appellee.
No. 4D02-368.
District Court of Appeal of Florida, Fourth District.
May 21, 2003.
Rehearing Denied July 29, 2003.
Mark D. Solov and Christopher L. Barnett of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, for appellant.
Keith T. Grumer and Maidenly Sotuyo-Macaluso of Grumer & Levin, P.A., Fort Lauderdale, for appellee.
WARNER, J.
Appellee, ASAL Products, Inc. ("ASAL"), an office supply wholesaler, sued appellant, Office Pavilion, an office supply company, for breach of a contract to supply chairs. Office Pavilion contended that the contract was unenforceable, as it was not supported by consideration and was indefinite. The trial court denied all motions directed to the enforceability of the contract, and after trial, the jury returned a substantial verdict in favor of ASAL. We hold, however, that the contract for the purchase of chairs was not enforceable and reverse.
Office Pavilion ("Pavilion") is a subsidiary of Herman Miller, Inc., a corporation which manufactures and distributes office furniture throughout the United States and Europe and is the exclusive distributor of Herman Miller office products in South Florida. Bernd Stier is a German wholesaler and reseller of office furniture and equipment mainly in Germany but also in other parts of Europe. Stier hired Oliver *368 Asel, a former employee of Pavilion, and the two formed ASAL in Florida in order to facilitate purchasing Herman Miller keyboard trays from Pavilion to resell to Stier's customers in Europe.
Asel contacted Pavilion's sales manager, Gary Kemp, to negotiate a contract for the sale of keyboards. After months of negotiations, on December 23, 1998, they entered into a two-year contract for keyboard trays. The contract provided, in part:
2. Purpose of Contract:
The parties agree that the purpose for entering into this agreement is for Pavilion to supply and ASAL to purchase from Pavilion products known as keyboard trays, and accessories for those keyboard trays.
3. Delivery Times:
Pavilion agrees to supply ASAL with keyboard trays & accessories ordered by ASAL within 30 days of receipt of any orders up to 2,000 units per month and any accessories ordered by ASAL to supplement ordered units.
A "unit" is defined, for purposes of this contract as a keyboard tray. An accessory is not a "unit" for purposes of calculating minimum and maximum order quantities.
4. Quantities:
ASAL agrees to order a minimum of 1,000 units per year. Pavilion agrees to supply ASAL with any and all quantities ordered by ASAL up to a maximum of 2,000 units per month plus the accessories for those ordered units.
The contract further provided that the unit price would be established by a separate writing, which included volume discounts. ASAL placed three orders for keyboard trays in amounts between 100 and 150, for which ASAL timely paid and Pavilion timely delivered.
Approximately a month after the contract was signed, ASAL became interested in expanding its contract to include Herman Miller's Aeron chair, and Asel commenced negotiations with Kemp for this modification. While these negotiations were proceeding, ASAL marketed the chair in January and February, in addition to the keyboard tray, to determine demand for the chair. On March 11, 1999, Kemp forwarded ASAL a letter regarding amending the parties' contract for the keyboard trays to include the Aeron chairs. The letter included the price for two Aeron chair models and indicated:
The terms and conditions of the December 23, 1998 Contract and Amendment will apply to these chairs except for Paragraph 3 and 4, Delivery Times and Quantities. The following paragraph shall be added to the Contract and Amendment:
Aeron Chair Delivery Times:
Pavilion agrees to supply ASAL with Aeron chairs ordered by ASAL within its established manufacturing lead times. The lead time will normally be 6 weeks from receipt of orders until shipment to Pavilion. Shorter lead times are also available depending upon order quantity and fabric selection.
Like the keyboards, the attached price list allowed for volume discounts on the chairs. Later, the parties signed an addendum memorializing the pricing structure.
After the letter regarding the chairs was sent, ASAL purchased six chairs from Pavilion to display at a trade show in Germany. The show was such a success that ASAL immediately reevaluated its sales forecast and requested a meeting with Kemp. Asel wanted 2,450 chairs to cover sales orders from the show plus 30 chairs *369 to use as samples. However, while ASAL wanted the chairs, it did not include a deposit with its order or specify model numbers for the chairs. Kemp replied that it could not fill the order because Herman Miller International would not approve the sale. Pavilion had authority from Herman Miller to supply its products to ASAL only for sale in Germany, and ASAL was expanding outside of Germany, contrary to Kemp's understanding of their original contract negotiations.
ASAL filed a breach of contract action, claiming as damages its lost profits for all expected sales under the contract for its two-year duration. While Pavilion admitted the existence of the keyboard contract, it defended against the much larger chair contract, contending that the agreement lacked consideration.
At trial, Kemp testified that he drafted the letter and addendum to expand the contract between the parties to include the chairs. He explained that the quantity paragraph from the keyboard tray contract was specifically excluded in his March 11th letter because "there was no minimum order quantities that were promised or that we agreed to for pricing for discounting purposes." He further explained that:
Furniture industry agreements to purchase. [sic] They are notThey don't require you to purchase unless it would specifically say you agree to by [sic] X amount. So historically what it is is [sic] it's a licenseit's a hunting license, if you will, is what we used to call them in the industry, to try to go after business, but with no promise that you'd ever see any business from it.
However, Kemp said that even with the lack of a quantity term provision, if Pavilion received an order from ASAL, Pavilion would fill it "within whatever terms." Basically, with a hunting license, Pavilion "had no expectations of what would come from it." Based upon his negotiations with Asel, Kemp did not know when or if ASAL ever was going to place these orders because Asel had been indicating for several months that the "orders were coming."
Asel testified that he brought an order for 2,480 chairs and a check for $633,000 to the meeting with Kemp regarding the chairs. However, Kemp informed him that Herman Miller would not approve the agreement. Kemp then advised Asel to submit a smaller order, and Asel modified the amount to 1,000 chairs with a $255,000 deposit. However, that order also was not accepted. Kemp denied that Asel ever presented the $633,000 check at the meeting at which Kemp informed Asel of Herman Miller's rejection of his order. As to the smaller order, Asel's check for $255,000 was returned for insufficient funds, after which Pavilion rejected the order.
After the trial court denied Pavilion's motion for directed verdict with regard to the enforceability of the contract and on the speculative nature of the lost profits, the jury awarded ASAL $4,000,000 in damages. From this verdict and resulting judgment, Pavilion appeals.
Pavilion contends that the chair contract between the parties was legally unenforceable for lack of consideration. We agree. While the contract for keyboards obligated ASAL to purchase a minimum of 1,000 keyboards a year from Pavilion, there was no minimum quantity term for the chairs. Essentially, Pavilion agreed to fill orders as made by ASAL, but ASAL had no obligation to place any orders at all. As Kemp said, the "agreement" was a "hunting license" which allowed ASAL to look for customers of Pavilion's merchandise and then to place orders when it found them.
*370 It is a fundamental principle of contract law that a promise must be supported by consideration to be enforceable. See Restatement (Second) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.") Moreover, a modification of a contract must be supported with consideration. See Wilson v. Odom, 215 So.2d 37, 38 (Fla. 1st DCA 1968). In a contract where the parties exchange promises of performance, "[i]f either of those promises is illusory or unenforceable then there is no consideration for the other promise." Allington Towers N., Inc. v. Rubin, 400 So.2d 86, 87 (Fla. 4th DCA 1981). As stated by the Court of Appeals for the Eleventh Circuit applying Florida law:
If, however, "one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisorwho says, in effect, `I will if I want to' "then that promise may be characterized as an "illusory" promise.... An illusory promise does not constitute consideration for the other promise, and thus the contract is unenforceable against either party.
Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1311 (11th Cir.1998) (citations omitted).
The Restatement of Contracts illustrates these contract principles. Section 75 acknowledges that "a promise which is bargained for is consideration if, but only if, the promised performance would be consideration." Restatement (Second) of Contracts § 75 (emphasis added). However, the Restatement further provides in Section 77, "[a] promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice or alternative performances." The commentary to this section explains:
Words of promise which by their terms make performance entirely optional with the "promisor" do not constitute a promise.... Where the apparent assurance of performance is illusory, it is not consideration for the return promise.
Restatement, supra at § 77 cmt. a (citation omitted). As appellant noted in its brief, the Restatement contains an example of illusory promises explaining this principle which is analogous to the alleged contract between Pavilion and ASAL.
A offers to deliver to B at $2 a bushel as many bushels of wheat, not exceeding 5,000 as B may choose to order within the next 30 days. B accepts, agreeing to buy at that price as much as he shall order from A within that time. B's acceptance involves no promise by him, and is not consideration.
Restatement, supra at § 77 cmt. a, illus. 1. Similarly, Pavilion agreed to sell to ASAL any chairs it chose to order at the price set forth in the price list. While ASAL may have agreed, its acceptance involved no promised performance and therefore did not constitute consideration to support the contract modification for the Aeron Chairs.
ASAL responds by maintaining that mutuality of obligation is unnecessary where other consideration is present in the contract; yet, it fails to point to any other consideration. It first cites to the parties' mutual promises in paragraph two of the contract for Pavilion to supply, and ASAL to buy, the chairs. Without the ensuing quantity term or price term, however, this "mutual promise" is illusory and unenforceable. Next, it maintains the consideration was the benefit Pavilion received from ASAL's ongoing marketing efforts and sales of the chairs. This "benefit" also does not constitute consideration. First, the contract does not obligate ASAL to market the chairs. Second, marketing the chairs actually benefits ASAL where it *371 obtains orders from it. ASAL's marketing efforts did not obligate Pavilion to sell the chairs. See, e.g., Gull Lab., Inc. v. Diagnostic Tech., Inc., 695 F.Supp. 1151, 1154 (D.Utah 1988) (holding agreement to actively market product did not supply consideration where contract failed to include requirement that purchaser had any obligation to buy a minimum quantity of product). Finally, ASAL asserts its implied promise to place future orders was consideration. Were that the case, then any promise to place orders with no obligation to do so would constitute consideration. The case law cited above rejects such an illusory promise.
Next, the parties' contract is unenforceable for lack of an essential term, the quantity of chairs ASAL must order. That a quantity term is essential to a contract for the sale of goods is illustrated by Florida's statute of frauds provisions adopted from the Uniform Commercial Code. Section 672.201(1), Florida Statutes (1997), provides that a contract for the sale of goods in excess of $500 must be in writing to be enforceable. "A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing." § 672.201(1) (emphasis added). Therefore, without a quantity term, this contract would be unenforceable under this section. See Merritt-Campbell, Inc. v. RxP Products, Inc., 164 F.3d 957, 962 (5th Cir.1999) ("[T]he only term that must appear in a writing to support an enforceable contract for the sale of goods is the quantity term."). Contrary to ASAL's argument, that pursuant to the statute the contract may still be enforceable if the parties admit the existence of the contract, the statute actually provides that a contract is enforceable, "[i]f the party against whom enforcement is sought admits in his or her pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted." § 672.201(3)(b) (emphasis added). Not only did Pavilion not admit to an enforceable contract with respect to the sale of chairs, it did not admit any quantity of chairs governed by the contract. Therefore, the contract could not be enforceable under this exception.
Because the chair contract was illusory and unenforceable, and Pavilion did not breach the keyboard contract, the trial court erred in denying Pavilion's motion for directed verdict. We therefore reverse the final judgment and direct entry of a judgment in favor of Pavilion.
GUNTHER, J., and HARNAGE, HENRY H., Associate Judge, concur.