MAKAR, J.
Foggy windows, and an oral agreement to replace and issue a new warranty for them, were the focus of a week-long jury trial,. which ended in a verdict for the homeowner against the window manufacturer, At issue is whether the trial court erred in setting aside the jury’s verdict on the homeowner’s breach of contract and fraud claims. We reverse for the entry of judgment for the homeowner on the contract claim.
t""1
Construction on Doctor Michael Loper s three-story, modern-style, ■ oceanfront home in Neptune Beach, Florida, began in August 2001. Large vinyl-clad windows, made by Weather Shield Manufacturing, Inc,, were used throughout the home, in- *900 eluding massive two-story windows facing the Atlantic Ocean. Many .of the panes were “gigantic,” some larger than 4-by~8 feet, weighing hundreds of pounds. Within a year after moving into the house in 2002, Dr. Loper noticed condensation on the inside seal of a few windows and later “fog” forming between some panes. The builder attempted to correct some of the moisture intrusion issues, but problems persisted. In 2005, a representative from Weather Shield, Kevin Mobley, came to inspect the windows. Though Dr. Loper never learned of the inspection’s results, over the next few years a few windows were replaced by the initial installer under the existing Weather Shield warranty, which required Dr. Loper to pay for labor charges that ranged from $250-$550 per pane. Thereafter, the window fogging problem persisted to the point that Dr. Loper estimated that between one-half to three-quarters of the windows were affected. By 2010, the situation worsened when window frames began leaking, causing wood floors to warp and drywall to sag. At that point, Dr. Loper contacted Weather Shield again, but his calls were not returned. His builder was able to arrange a meeting with the company in late November/early December 2010, the events and ensuing fallout of which — as recounted by Dr. Loper and his contractor — are central to this case.
Initially, six people were at the meeting: Dr. Loper and his wife, his contractor, two owners of the installation company, and Mr. Mobley of Weather Shield, who had inspected the home five years earlier. Mr. Mobley and Dr. Loper separated from the group to discuss the situation and to allow Mr. Mobley to visually inspect a few of the windows. At the outset, Mr. Mobley asked if Dr. Loper had an attorney (“The first thing that he asked me was whether I had an attorney.”), to which Dr. Loper replied, “No, I do not, but if this problem is not settled to my satisfaction, I plan to seek legal action.” Mr. Mobley responded, “Good. If you have an attorney, I can’t help you.” When asked what he sought, Dr. Loper said he wanted Weather Shield to replace the defective windows and issue a new written ten-year warranty, like the one issued for the initial set of windows (which Mr. Mobley said was set to run out in around October 2011). Mr. Mobley said he’d relay' the request to his superiors. According to the contractor, who was present, Dr. Loper left “happy,” it appearing the meeting had been successful.
Mr. Mobley contacted Dr. Loper in early 2011 saying, “we have a deal.” The terms were reiterated and Mr. Mobley agreed to them without negotiation. Dr. Loper asked for the agreement to be put into writing. A month later, Dr. Loper followed up with Mr. Mobley, who said that the “legal department” was drawing up the deal and that he would check on its status and call Dr. Loper.
Mr. Mobley never returned the call. Dr. Loper followed up, however, calling “dozens of times” and leaving voicemails. Receiving no response, Dr. Loper began calling Weather Shield’s corporate offices, learning at some point that Mr. Mobley had been laid off from the company. He was referred to Mr. Mobley’s boss, Bill Dix, with whom he spoke about the matter. Mr. Dix was familiar with the situation, reiterated a deal had been reached, and said “he had approved the agreement.” Mr. Dix said he would check on the status of the agreement in the legal department and get back with .Dr. Loper; but, as occurred the last time with Mr. Mobley, the promised call-back never happened. Dr. Loper called Mr. Dix multiple times to no avail.
In August 2011, with the warranty about to expire, Dr. Loper sent an email to *901 Weather Shield explaining the problem, stating that “[ajlmost every window in my home is fogged and has lost its seal.” He asked to speak with one of the owners of the company directly. At this point, eight or nine months had passed since Weather Shield had promised him what he requested. Dr. Loper was “begging for help at this point. My home is deteriorating around me as ... I’m being stalled. The problem is getting worse. Water intrusion is getting worse. This is not a simple matter that I can’t see out of a window. Again, floors are warping, ceilings are sagging, walls are losing their paint and chipping. It’s becoming an unhealthy environment.”
Eventually, on Friday, September 5th at 8:53 p.m., Dr. Loper received an email from Katie Zenner of Weather Shield, whom he had never met nor heard of, stating “Michael: ... Weather Shield will not extend the warranty on your product” and that any “claims will be processed under the terms of our standard limited warranty.” The email told Dr. Loper to “[pllease continue to work with [the window installer] on any warranty claims.” This was the last contact between the parties prior to Dr. Loper filing suit.
Dr. Loper said he relied on the statements made by Weather Shield representatives up until he received the Friday evening email from Ms. Zenner, at which point he realized that he had been misted. During the entire time he’d been communicating and cooperating with Weather Shield, he did not hire an attorney or pursue filing a lawsuit, and never thought about putting a definite time on how long he would refrain from doing so. He chose to work with the company and believed he had fully performed his part of the bargain by not seeking to hire a lawyer or by suing.
But now things had changed. In February 2012, Dr. Loper sued Weather Shield alleging breach of an oral agreement and fraud. In the first count, Dr..Loper alleged that Weather Shield breached their oral contract by refusing to replace the defective windows and failing to issue a new warranty as promised. The fraud count alleged that Weather Shield misted Dr. Loper into believing it would replace and re-warrant his windows when it had nó intention of doing so.
At trial, the parties presented conflicting testimony as. to whether an oral agreement had been reached to replace and re-warrant the windows. Dr. Loper testified, as recounted in the facts set forth above. At the close of Dr. Loper’s case, Weather Shield moved for directed verdict or new trial, arguing that Dr. Loper did not present any evidence to establish that the two parties had a “meeting of the minds” as to the essential terms of the oral agreement or that adequate consideration was given. Weather Shield also argued that the parties’ agreement should have been reduced to writing under the statute of frauds, which barred the enforcement of the alleged oral contract. Dr. Loper responded that equitable estoppel and performance in the form of refraining from filing legal action prevented Weather Shield from relying on the statute of frauds, and that refraining from taking legal action was adequate consideration for an oral contract. The- trial court reserved ruling on the motion.
In support of its case, Weather Shield presented the testimony of Mr. Mobley, who was laid off in 2011 but returned to Weather Shield in 2013. He agreed that he told Dr. Loper at the outset that he could not help him if Dr. Loper was going to pursue legal action and hire an attorney. He also agreed that he inspected the windows, that some had failed, and that he *902 sent paperwork to the home office about the deficiencies. He said, however, that he told Dr. Loper that he was only authorized to grant up to $150 in relief. He said he told Dr. Loper that he lacked the authority to grant the terms of Dr. Loper’s request and that he would take the request to his superiors. He denied telling Dr. Loper that a deal had been made. . ■
The deposition of Mr. Dix, then the northeast regional sales manager for Weather Shield, was read to the jury. He recounted that he had only a general and “minimal” familiarity with the situation (“The only thing I know is they had some glass challenges, glass issues.”), had little recollection of specifics other than one conversation he’d had with Mr. Mobley that related to Dr. Loper’s request to replace defective windows and extend the warranty on the new glass, and couldn’t recall or was unaware of any communications that Weather Shield may have had with Dr. Loper about the matter. He hadn’t seen the company’s file on Dr. , Loper’s windows (he assumed one existed), didn’t know if Weather Shield had ever inspected the windows, said he didn’t have the authority over warranty matters (“I can’t do that” because “it is not my responsibility”), and would be merely “guessing” at what may have happened regarding the processing of Dr. Loper’s complaints vis-a-vis the local installer, Mr. Mobley, and the warranty department. He said only one of the individual owners of Weather Shield had the authority to issue a “direct 10-year warranty to a customer.”
Weather Shield also called one of the owners of the installation company, Brad Duttera, who had no firsthand knowledge about the installation of Dr. Loper’s windows other than his review of the company’s files and that the work had been sent to a subcontractor. He noted- the home was “very unique” requiring “huge pieces of glass.” The company’s file on the Lop-er windows showed various problems had arisen over the years and that the installer’s warranty was only for a year, while the Weather Shield warranty was for twenty years (100% for first ten years, prorated after that). He initially opined that “sonic booms” from a Navy air show had caused the windows’ seal failures, but Weather Shield withdrew the question after objection. Upon meeting Dr. Loper in late 2007/early 2008, he told him of other reasons for the seal failures (such as the flexing of the exceptionally large glass panels), and characterized Dr. Loper as refusing to accept that the problems could be other than manufacturing defects. Just prior to the late 2010 meeting at the Loper residence, he met with Mr. Mobley, telling him that Dr. Loper was threatening to sue. At the home, he described how Mr. Mob-ley used an ice cube to test for seal failures on a number of the problematic windows, thereafter being told to replace five of them. He confirmed that Dr. Loper asked for an extended warranty, and that Mr. Mobley agreed to take the request back to “corporate headquarters” to “see what they will do, if they will accommodate you at all in this request.” He denied that Mr. Mobley agreed to anything else as to the warranty issue.
Phillip Drake, a former Weather Shield director of operations testified that in 2005, the window installer asked him to inspect the Loper home for water intrusion issues, which he found (“there was obviously water infiltrating into the house”), attributing them- to cracks in the roof, stucco, and window seals. He typically shared the results of his inspections only with the person, here the installer, who had asked for the inspection; he generally did not share information with homeowners such as Dr. Loper. He opined on various explanations for why the windows might get damaged prior to installation, *903 but acknowledged that he did no testing of the windows at the Loper home (only inspecting them). Weather Shield then rested its case.
After hearing lengthy closing arguments on the trial’s fifth day, the jury returned its verdict mid-afternoon, answering “yes” to the following questions about the-breach of contract claim: . . ,
1. Did Michael Loper and Weather Shield, Manufacturing, Inc., enter into an oral agreement regarding the windows at. the Loper. home?
2. Did at least one of the parties (Michael Loper and/or Weather Shield Manufacturing, Inc.) fully perform his or its responsibilities under the oral agreement and do so within one year of that agreement?
3. Did Michael Loper: (a) orally agree not to file a lawsuit against Weather Shield Manufacturing, Inc., in exchange for replacement of all defective windows and a new. ten-year warranty; (b) reasonably rely in good faith on Weather Shield Manufacturing, Inc., to reduce this oral agreement to writing; and (c) reasonably rely on Weather Shield Manufacturing, Inc.’s words and action to change his position to his detriment?
4. Did Weather Shield Manufacturing, Inc. breach the oral agreement?
5. Did Michael Loper sustain damages as a result of Weather Shield Manufacturing, Inc.’s breach of. the oral contract?
The jury also ruled in Dr. Loper’s favor on the fraud claim. It determined that the amount of damage sustained under either theory of recovery was $126,816.25, reflecting what Dr. Loper had paid to replace most of the windows and to repair collateral damage fi*om water intrusion, which took eight months and required him to remove himself and his belongings from the home during the remedial construction.
Post-trial, Weather Shield renewed its request for a directed verdict. The trial court, however, granted its still-pending initial motion, reaching two conclusions. First, the trial court concluded that “any consideration provided by [Dr. Loper] for the oral agreement was illusory.” ' Although Dr. Loper agreed to refrain from suing on the original warranty, no evidence established a “specific period of time for which he would refrain from suit.” As such, the trial court concluded that a “promise to refrain from suit for an unspecified period of time is an illusory promisef,] which cannot be deemed specific consideration for an agreement.” Second, the trial court ruled that the statute of frauds, section 725.01, Florida Statutes, barred the enforcement of the oral agreement because it “would have provided [Dr. Loper] with a new or extended window warranty for a period of more than one year.”
II.
When a trial court overrides a jury’s verdict and directs entry of judgment for the non-prevailing party, our review is de novo, meaning we review the record to determine whether any view of the evidence supports the jury’s verdict. Duelos v. Richardson, 113 So.3d 1001, 1003 (Fla. 1st DCA 2013) (motion for directed verdict should be granted only if no view of the evidence could support a verdict for the nonmoving party). For this reason, “[i]fi there are conflicts in the evidence or different reasonable inferences may be drawn from it, then the issue is a factual one that should be submitted to the jury and not be decided by the trial court as a matter of law.” Id. (citation omitted). The determination of whether an oral agreement is unenforceable as within the *904 ■statute of frauds involves a legal question that is reviewed de novo. DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So.3d 85, 91 (Fla.2013). We turn to the two rulings the trial court made in support of relieving Weather Shield from the jury’s verdict on the breach of contract claim; because we find both were erroneous, we need not address whether the jury’s fraud verdict should be reinstated.
A.
At the outset, it was error to conclude that Dr. Loper’s abstention from hiring a lawyer or suing Weather Shield was inadequate consideration for the parties’ agreement under the circumstances presented. It is long-settled under Florida law, as the trial court recognized, that refraining from enforcing a legal right, as Dr. Loper did here by not suing under the existing warranty, constitutes valid consideration for a contract. See City of Valparaiso v. Long, 141 So.2d 334, 335 (Fla. 1st DCA 1962) (“The rule is well recognized that the forbearance to enforce a legal right is sufficient consideration for a promise where such forbearance is requested.”); see also Citibank Int’l v. Mercogliano, 574 So.2d 1190, 1191 (Fla. 3d DCA 1991) (“It is well recognized that forbearance to enforce a legal right may constitute consideration for a promise. It is not required that the forbearance be provided for in express language or terms.”); Bara v. Jones, 400 So.2d '88, 89 (Fla. 4th DCA 1981) (recognizing the principle that forbearance to sue is adequate consideration under “fundamental” principles of contract law); ■ see generally 3 Williston on Contracts §'7:46 (4th ed.) (“Forbearance, such as will constitute valid consideration, often takes the form of forbearance from litigation. An agreement to forbear from prosecuting a claim normally constitutes valid consideration.”) (footnotes omitted). Of course, “[fjorbearance of bringing suit ordinarily must be communicated to the other party, however, to qualify as consideration for contract.” Id.
Viewed in his favor, the evidence supports that it was at Weather Shield’s insistence that Dr. Loper stand-down and not engage legal counsel or sue, despite the looming end of the initial warranty. His forbearance was a fundamental basis of the parties’ agreement, one with which Dr. Loper complied until Weather Shield reversed course shortly before his existing warranty was to expire. The jury specifically concluded that Dr. Loper refrained from pursuing his available legal rights, answering “yes” to the question of whether Dr. Loper “orally agree[d] not to file a lawsuit against Weather Shield Manufacturing, Inc., in exchange for replacement of all defective windows and a new ten-year warranty.” Not only did Dr. Loper forbear from filing suit, which Florida law recognizes as adequate consideration, he also refrained from hiring a lawyer, which was another right he put on hold.
The trial court’s focus was' on the fact that neither Dr. Loper nor Weather Shield agreed upon a specific amount of time that he would refrain from exercising his rights. Dr. Loper, however, had only a finite amount of time remaining in which to exercise his legal rights. His temporal forbearance was limited by a terminal date: the October 2011 cutoff of the existing warranty. Each day foregone was one less opportunity to avail himself of his rights; each was a discrete benefit to Weather Shield and a discrete detriment to Dr. Loper. See Tampa N. R.R. Co. v. City of Tampa, 104 Fla. 481, 140 So. 311, 313 (1932) (“A contract may-be supported by any act of the plaintiff from which the defendant derives a benefit, or it may be supported by any labor, detriment, or inconvenience, however small, sustained by the plaintiff, if such act as performed or *905 inconvenience suffered is by the consent express or ■ implied • of defendant”). Viewed in this light, forbearance was neither limitless nor without boundary, ■ the warranty period providing an outer limit.
Viewed in a light favorable to Dr. Loper, the parties had a deal that could be readily and promptly effectuated, but which languished — not due to Dr. Loper’s actions— but because of dawdling by Weather Shield. The jury specifically answered “yes” to the question of whether Dr. Loper “reasonably reified] in good faith on Weather Shield Manufacturing,.Inc., to reduce this oral agreement to writing,” and could have readily concluded that the time period of Dr. Loper’s forbearance was expected to be brief, but ultimately was prolonged due to Weather Shield’s dithering (the jury concluded it was fraud, but we need not label it that).
Weather Shield argues that “the only reasonable inference to reach from the presentation of evidence was not that Plaintiff provided consideration by not suing, but rather Plaintiff threatened to sue to prompt action from Defendant.” Even if a threat to sue was made to get Weather Shield’s attention, the jury was entitled to find — and did find — that legally-recognized forbearance was established, specifically agreeing in the verdict form that Dr. Lop-er “orally agree[d] not to. file a lawsuit against Weather Shield Manufacturing, Inc., in exchange for replacement of all defective windows and a new ten-year warranty.” As the trial court’s order noted: “Viewed in the light most favorable to [Dr. Loper],. [Weather Shield] made a statement that the parties ‘had a deal,’ and that the agreement was ‘in legal’ so that a written agreement could be prepared.” Dr. Loper’s forbearance, in light of the “deal” that Weather Shield announced and sent to the legal department, was established.
The trial court relied on Office Pavilion South Florida, Inc. v. ASAL Products, Inc., 849 So.2d 367 (Fla. 4th DCA 2003), but that case involved a written agreement containing an illusory promise. ASAL Products, an office supply wholesaler, and Office Pavilion, an office supply company, entered a written two-year contract to supply ASAL with a minimum of 1,000 keyboard trays annually. Soon thereafter, ASAL expressed interest in expanding the contract to include office chairs, which was done via a letter agreement that contained no minimum number of chairs that ASAL had to buy each year. When the office supply company could not fulfill a request for 2,450 chairs by ASAL, the latter filed a breach of contract action, which resulted in a $4 million verdict. On appeal, the Fourth District reversed, concluding that ASAL had given no consideration for the contract because it “had no promise to place any orders at all.” A promise to order chairs in the future, without some specific or identifiable number, is illusory; ASAL’s promise required it to do nothing and provided no other consideration. The court rejected the argument that an “implied promise to place future orders was consideration,” saying “[w]ere that the case, then any promise to place orders with no obligation to do so would constitute consideration.” Id. at 371. In contrast to ASAL, which gave up nothing, Dr. Loper gave up his right daily to seek redress against Weather Shield.
B.
It was also error to conclude that the parties’ agreement contravened the statute of frauds because it required the issuance of a ten-year warranty on the replaced windows. The statute of frauds, in pertinent part, says that “No action shall be brought ... upon any agreement that is not to be performed within the *906 space of 1 year from the making thereof ,.. unless the agreement or promise ... shall be in writing and signed by the party to be charged therewith.... ” § 725.01, Fla. Stat. (emphasis added). The statute is not implicated if the oral agreement can be accomplished within one year. As our supreme court stated eighty years ago:
When, as in this case, no definite time was fixed by the parties for the performance of their agreement, and there is nothing in its terms to show that it could not be performed within a year according to its intent and the understanding of the parties, it should not be construed as being within the statute of frauds,. The general rule so stated is subject to the qualifying rule that when no time is agreed on for the complete performance of the contract, if from the object to be accomplished by it and the surrounding circumstances, it clearly appears' that the parties intended that it should extend for a longer period than a year, it is within the statute of frauds, though it cannot be said that there is any impossibility preventing its performance within a year.
Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (1937). Similarly, we recently said:
The general rule is that the Statute of Frauds bars enforcement of oral contracts which by their terms are not to be performed within a year. The fact that a contract may not be performed within a year does not bring it within the statute. In other words, to make a parol contract void, it must be apparent that it was the understanding of the parties that it was not to be performed within a year from the time it was made. Contracts for an indefinite period generally do not fall within the Statute of Frauds.
Alpha Data Corp. v. HX5, L.L.C., 139 So.3d 907, 909-10 (Fla. 1st DCA 2013) (emphasis added). As the highlighted language emphasizes, the focus of the statute of frauds is whether the parties’ intended that the parol contract itself was not to be performed within a year. See also Lundstrom Realty Advisors, Inc. v. Schickedanz Bros.-Riviera Ltd., 856 So.2d 1117, 1122 (Fla. 4th DCA 2003) (“When an oral agreement is silent as to time, yet capable of performance within one year, the parties’ intent will control to determine whether the statute of frauds bars enforcement.”).
The proper focus is on the parol contract itself, not the warranty. The oral agreement simply required the issuance of a replacement policy, which could be readily accomplished within a year. See, e.g., Browning v. Poirier, 165 So.3d 663, 666 (Fla.2015) (oral agreement to share lottery proceeds outside the statute of frauds because at the time of their oral agreement “nothing in the terms of their contract demonstrates that it could not be performed within one year.”). The record evidence supports the conclusion that Dr. Loper and Weather Shield both intended that their oral agreement be effectuated promptly; no evidence supports that they intended that the issuance of the warranty was intended or required to occur beyond a year’s time. Because issuance of replacement policy could have, indeed should have, occurred in less than a year, the statute of frauds issue is inapplicable.
A number of cases, including the Restatement of Contracts, make this point. For example, the supreme court in Yates, in language that applies here, said:
In our view, the agreement sued on was clearly within the general rule as here stated. It contains no express provision that it should not be performed within a year, nor is there anything embraced within its terms that shows conclusively that it was intended to run for more than a year. Under its terms, it is *907 susceptible of performance within a year, and the evidence shows that it was expected to have been performed within that time. When such is the case, even if actual performance runs beyond the year, it is not within the statute of frauds.
Yates, 181 So. at 342, 344-45 (at issue was “an oral agreement to pay certain second mortgage bonds secured by- a trust deed and falling due approximately four years from date of the agreement”). Similarly, in Acoustic Innovations, Inc. v. Schafer, 976 So.2d 1139, 1143 (Fla. 4th DCA 2008), the parties had an oral agreement that each would be 50% owners of a company, one party to get his shares initially and the other to get his upon later request. When the latter asked for his shares several years later, and was rebuffed., he sued to enforce the oral agreement, which was met with a statute of frauds defense (i.e., that the agreement was incapable of being performed within a year). The Third District reversed, concluding that “[n]o evidence established the existence of an oral contract incapable of being performed within one year” because the shares, had they been requested “immediately after forming the oral agreement,” would have to have been transferred. “The fact that Schafer waited until a year had passed to request the shares is of no import.” Id. at 143. The court noted prior cases setting forth the “general rule is that an oral contract for an indefinite time is not barred by the Statute of Frauds. Only if a contract could not possibly be performed within one year would it fall within the statute.” Id. (citations omitted). Because the oral contract could have been performed within a year, and despite its “indefinite time” for the share transfer, its enforcement was not barred by the statute. Id.; see also Browning, 165 So.3d at 666 (“judging from the time the oral contract of indefinite duration is made, if the contract’s full performance is possible within one year from the inception of the . contract, then it falls outside the statute of frauds.”); Hesston Corp. v. Roche, 599 So.2d 148, 152 (Fla. 5th DCA 1992) (“Only if. a contract could not possibly be performed within one, year would it fall within the statute.”).
Similarly in Terzis v. Pompano Paint & Body Repair, Inc., 127 So.3d 592, 595 (Fla. 4th DCA 2012), a boat' owner entered an oral contract for his boat to be secured and “free from damage or theft,” paying $100 monthly. Id. at 594. After the boat was stolen, the owner sued to enforce the oral agreement, the business claiming a statute of frauds defense, which, the trial court relied upon to dismiss the complaint with prejudice. The Fourth District reversed, noting that the “reasonable inferences arising from the complaint suggest that the oral contract was for an indefinite time and could be performed within one year ... Further, the plaintiff alleged, that he fully performed the contract by paying the defendant on a month-to-month basis to store and secure his boat.” Id. at 595 (emphasis added). Under these factual assertions, the oral agreement was outside the statute of frauds, making dismissal with prejudice improper.
The Restatement of Contracts also supports Dr. Loper’s position, stating in section 130(1): “Where any promise in a contract cannot be fully performed within a year from the time the contract is made, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance.” Restatement (Second) of Contracts: Contract Not to Be Performed Within a Year § 130 (1981). As an example of this principle, that a contract performable within a year is outside the statute’s reach, the Restatement provides the following scenario:
A, an insurance company, orally promises to insure B’s house against fire for *908 five years, B promising to pay the premium therefor within the week. The contract is not within the Statute of Frauds, since if the house burns and the insurer pays within a year the contract will be fully performed.
Id. Consistent with this example, issuance of the warranty for the replacement windows could have been performed by Weather Shield within a year, thereby removing the statute of frauds as a bar.
Even if the contract was required to be performed beyond a year, the statute is inapplicable because the jury concluded that Dr. Loper fully performed his responsibilities. It is well-established that “full performance by one party to the contract works to remove an oral agreement from the purview of the statute of frauds.” Terzis, 127 So.3d at 595 (citations omitted); see also Venditti-Siravo, Inc. v. City of Hollywood, Fla., 418 So.2d 1251, 1253 (Fla. 4th DCA 1982) (“[T]he Statute of Frauds may not be employed as a defense where the oral contract has been fully performed by the other party.”); see also Restatement (Second) of Contracts: Contract Not to Be Performed Within a Year § 130(2) (1981) (“When one party to a contract has completed his performance, the one-year provision of the Statute does not prevent enforcement of the promises of other parties.”).
Here, the jury necessarily concluded that Dr. Loper fully performed his side of the bargain, answering “yes” to the question “Did at least one of the parties (Michael Loper and/or Weather Shield Manufacturing, Inc.) fully perform his or its responsibilities under the oral agreement and do so within one year of that agreement?” No evidence was presented that Weather Shield fully performed, leaving Dr. Loper as the party who fully performed. This factual determination, like the others the jury reached, was within its province to make, disputed evidence to the contrary notwithstanding. See Elliott v. Timmons, 519 So.2d 671, 672 (Fla. 1st DCA 1988).
Finally, all else aside, that Dr. Loper relied to his detriment on Weather Shield’s representations is a basis to preclude application of the statute of frauds under principles of equitable estoppel. See, e.g., Gleason v. Leadership Hous., Inc., 327 So.2d 101, 104 (Fla. 4th DCA 1976) (party who induces reliance may be estopped from contesting the validity of a challenged agreement). The jury answered “yes” to the verdict question regarding whether Dr. Loper: “reasonably reified] on Weather Shield Manufacturing, Inc.’s words and action to change his position to his detriment?” This finding, supported by the record, also negates the statute’s application.
III.
Because the trial court erred in voiding the jury’s verdict, we reverse and remand for entry of judgment in favor of Dr. Lop-er on the breach of contract claim, which provides him with the full relief he would otherwise receive under the jury’s verdict, making it unnecessary for us to address the fraud claim.
REVERSED AND REMANDED.
ROBERTS and ROWE, JJ., concur.